Kolin C. Tang (SBN 279834)
MILLER SHAH LLP
19712 MacArthur Boulevard, Suite 222
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

*Counsel for Plaintiffs, the Plan,*
*and the Proposed Class*

[Additional Counsel Listed Below]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Prime Healthcare ERISA Litig.* | Case No.  8:20-cv-1529-JLS (JDEx) |
| | **PLAINTIFFS' NOTICE OF MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION** |
| | Hearing Date: December 1, 2023 |
| | Hearing Time: 10:30 a.m. |
| | Judge: Hon. Josephine L. Staton |
| | Courtroom: 10A |
| | Initial Complaint Filed: August 18, 2014 |

# NOTICE OF MOTION

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on December 1, 2023, or as soon as this matter may be heard before the Honorable Josephine L. Staton in Courtroom 8A of the above-entitled Court, located at First Street U.S. Courthouse, 350 West 1st St., Los Angeles, CA 90012, Plaintiffs Maria D. Ornelas, Brian Horton, and Paulina Cervantes (collectively, "Plaintiffs") will and hereby do move the Court to certify the above-captioned action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs' motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Kolin C. Tang and the attached Exhibits; the pleadings in this action; and such other materials and evidence as may be presented to the Court.  This motion is made following the L.R. 7-3 conference of counsel, which took place on June 30, 2023.

For the reasons set forth in the Memorandum of Law and all items properly considered by the Court, Plaintiffs respectfully request that this Court enter an order: (1) certifying this case as a class action and certifying the following proposed class (the "Class"):

> All participants and beneficiaries in the Prime Healthcare Services, Inc. 401(k) Plan (the "Plan") at any time on or after August 18, 2014 to the present (the "Class Period"), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period;

(2) appointing Plaintiffs as representatives of the Class; and (3) appointing Plaintiffs' counsel as counsel for the Class under Federal Rule of Civil Procedure 23(g).

1  Dated: July 7, 2023                          Respectfully submitted,

2                                               /s/ Kolin C. Tang
3                                               Kolin C. Tang (SBN 279834)
                                                MILLER SHAH LLP
4                                               19712 MacArthur Boulevard
5                                               Suite 222
                                                Irvine, CA 92612
6                                               Telephone: (866) 540-5505
7                                               Facsimile: (866) 300-7367
                                                Email: kctang@millershah.com
8
9                                               *Counsel for Plaintiffs, the Plan,*
                                                *and the Proposed Class*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Table Of Authorities ................................................................. iv

I.      INTRODUCTION ................................................................. 1

II.     BACKGROUND ................................................................. 2

    A.      The Plan and the Parties ................................................. 3

    B.      Plaintiffs' Claims ......................................................... 5

    C.      The Proposed Class ...................................................... 7

III.    ARGUMENT ................................................................. 9

    A.      Class Certification Standard ........................................... 9

    B.      Plaintiffs' Claims and the Proposed Class Satisfy Rule 23(a) ............. 10

        1.      The Class is Sufficiently Numerous ........................... 10

        2.      There are Numerous Common Questions of Law and Fact ....... 11

        3.      Plaintiffs' Claims are Typical of the Class ................... 13

        4.      Plaintiffs and Class Counsel will Protect the Interests of the Class ............................................................ 16

    C.      Plaintiffs and the Proposed Class Satisfy Rule 23(b)(1) ...................18

        1.      The Class Satisfies the Requirements of Rule 23(b)(1)(A) ........19

        2.      The Class Satisfies the Requirements of Rule 23(b)(1)(B) ....... 20

    D.      Proposed Class Counsel Meet the Requirements of Rule 23(g) .......... 22

IV.     CONCLUSION ................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 613(1997) ...................................................................*passim*

*Beach v. JPMorgan Chase Bank, N.A.*,
  2019 WL 2428631 (S.D.N.Y. June 11, 2019) ...............................................16

*Bias v. Wells Fargo & Co.*,
  312 F.R.D. 528 (N.D. Cal. 2015) ....................................................................9

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) .............................................................................2

*Brieger v. Tellabs, Inc.*,
  245 F.R.D. 345 (N.D. Ill. 2007) .....................................................................22

*Cunningham v. Cornell Univ.*,
  2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) .............................12, 14, 21, 22

*Cryer v. Franklin Templeton Res., Inc.*,
  2017 WL 4023149 (N.D. Cal. July 26, 2017) .................................................2

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .......................................................................11

*Falberg v. Goldman Sachs Group, Inc.*, No.,
  2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) .................................................15

*Foster v. Adams & Assocs., Inc.*,
  2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ...............................................2

*Franco-Gonzales v. Napolitano*
  2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ............................................10

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................11

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ..................................................................11

*In re Citigroup Pension Plan ERISA Litig.*,
    241 F.R.D. 172 (S.D.N.Y. 2006) ............................................................20

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................1

*In re Northrop Grumman Corp. ERISA Litig.*,
    2011 WL 3505264, (C.D. Cal. Mar. 29, 2011) ................................2, 16, 22

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ......................................................................1

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
    140 S. Ct. 768 (2020) ..............................................................................15

*Jacobs v. Verizon Commc'ns Inc.*,
    2020 WL 4601243 (S.D.N.Y. June 1, 2020).............................................21

*Johnson v. Couturier*,
    572 F.3d 1067, 1085 (9th Cir. 2009) ........................................................1

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) .....................................................*passim*

*Lauderdale v. NFP Ret., Inc.*,
    2022 WL 1599916 (C.D. Cal. Feb. 16, 2022) ......................................9, 20

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) .........................................13, 16, 21, 22

*Mass Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ...........................................................................9, 10, 16

*Munro v. Univ. of S. California*,
    2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) .....................................2, 19, 20

*Moreno v. Deutsche Bank Am. Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ....................................13, 17, 21

v

*Norris v. Mazzola*,
   2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ....................................................2

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815, 834 (1999) ...............................................................................21

*Sacerdote v. New York Univ.*,
   2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ................................13, 14, 16, 20

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966) ….....................................................................................17

*Tatum v. R.J. Reynolds Tobacco Co.*,
   254 F.R.D. 59 (M.D.N.C. 2008) ...................................................14, 15, 21, 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...............................................................................*passim*

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ........................................................................11

**Statutes**

29 U.S.C. § 1001 .....................................................................................................1

29 U.S.C. §§ 1002 .................................................................................................3

29 U.S.C. § 1104 ...................................................................................................12

29 U.S.C. §§ 1109.........................................................................................1, 9, 16

29 U.S.C. § 1132.........................................................................................1, 9, 16

**Rules**

Fed. R. Civ. P. 23................................................................................... *passim*

Fed. R. Civ. P. 26..................................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs individually and on behalf of the Prime Healthcare Services, Inc. 401(k) Plan and as representatives of a proposed class of similarly situated plan participants and beneficiaries, respectfully submit this Memorandum of Law in support of the accompanying Motion for Class Certification ("Motion") and hereby move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order certifying this action ("Action") as a class action, appointing Plaintiffs as representatives of the Class, and appointing Plaintiffs' counsel as counsel for the Class.

## I.   INTRODUCTION

In this Action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, Plaintiffs allege that Defendants[1] breached fiduciary duties owed to the Plan by failing to appropriately monitor the Plan's investments and service arrangements.   ERISA's fiduciary duties have been recognized by courts around the country as "the highest duty known to the law."  *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).  To redress breaches of fiduciary duty, ERISA authorizes any plan participant to bring an action in a representative capacity on behalf of a plan to enforce ERISA's fiduciary duties and remedial provisions.  *See* 29 U.S.C. §§ 1109(a), 1132(a)(2).  As courts in this Circuit have recognized, "ERISA litigation involving a claim for breach of fiduciary duty presents a paradigmatic example of a [Rule 23](b)(1) class."  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 112 (N.D. Cal. 2008) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)) (internal alterations omitted); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases).  Plaintiffs' claims fall squarely within this paradigm, as their

---

[1] "Defendants" refers collectively to Prime Healthcare Services, Inc., and the Prime Healthcare Services, Inc. 401(K) Plan Committee ("Committee").

claims arise from Defendants' plan-level conduct and Plaintiffs seek remedies for the Plan on behalf of all participants.

Class certification has been granted in ERISA cases involving defined contribution plans in the Ninth Circuit and around the country. *See Munro v. Univ. of Southern California*, 2019 WL 7842551, at *10–*11 (C.D. Cal. Dec. 20, 2019); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017) (Staton, J.); *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *8 (C.D. Cal. Mar. 29, 2011) (collecting cases); *Foster v. v. Adams & Assocs., Inc.*, 2019 WL 4305538, at *8 (N.D. Cal. Sept. 11, 2019); *Norris v. Mazzola*, 2017 WL 6493091, at *5 (N.D. Cal. Dec. 19, 2017); *Cryer v. Franklin Templeton Resources, Inc.*, 2017 WL 4023149, at *7 (N.D. Cal. July 26, 2017); *Kanawi*, 254 F.R.D. at 112; *see also Boley v. Universal Health Servs., Inc.*, 36 F.4th 124 (3d Cir. 2022) (affirming certification of class to pursue ERISA breach of fiduciary duty claims).

In addition, Plaintiffs seek to be appointed as representatives of the Class and the appointment of their counsel as counsel for the Class ("Class Counsel"). Plaintiffs have demonstrated steadfast commitment to serving as class representatives and pursuing redress on behalf of the Plan and the Class and there are neither unique defenses nor conflicts that prevent Plaintiffs from serving effectively as class representatives.

The Court should certify this Action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(1).

## II.   **BACKGROUND**

The facts of this Action are recited in detail in the Amended Class Action Complaint ("Amended Complaint" or "AC") filed on December 14, 2020 (ECF No. 16). This Memorandum will only restate facts relevant to the Motion.

### A.      The Plan and the Parties

Plaintiffs are former employees of Prime Healthcare and participants in the Plan under 29 U.S.C. § 1002(7).  *See* Declaration of Maria D. Ornelas ("Ornelas Decl."), ¶¶ 3, 5; Declaration of Brian Horton ("Horton Decl."), ¶¶ 3, 5; and Declaration of Paulina Cervantes ("Cervantes Decl."), ¶¶ 3, 5.  During the Class Period, Plaintiffs' Plan investments included several vintages of the Fidelity Freedom funds (the "Active Suite") and the other investments at issue.  *See* Ornelas Decl., ¶ 5; Horton Decl., ¶ 5; and Cervantes Decl., ¶ 5.  In addition, like all participants in the Plan, Plaintiffs were subject to excessive recordkeeping and administrative ("RK&A") and investment management fees.  *See id.*

Defendants are fiduciaries of the Plan under ERISA.  *See* Declaration of Kolin C. Tang ("Tang Decl."), Ex. A, Investment Policy Statement for the Prime Healthcare Services, Inc. 401(K) Plan dated 2013, at PrimeHealthcare_ERISA_0000469–70 (reflecting fiduciary responsibilities of Prime and the Committee); Ex. B, Prime Healthcare Services, Inc. Benefits Committee Charter at PrimeHealthcare_ERISA_0000358–64 (reflecting delegation of management and administrative responsibilities from Prime's Board of Directors to the Committee).  Prime sponsors the Plan and, through its Board of Directors, appointed the Committee and the Committee's individual members to administer the Plan on its behalf.  *See* Tang Decl., Ex. B, at PrimeHealthcare_ERISA_0000358.  The Committee was charged with selecting and monitoring the investment alternatives available to participants and beneficiaries under the Plan and retaining service providers on behalf of the Plan, among other responsibilities.  *See* Tang Decl., Ex. A, at PrimeHealthcare_ERISA_0000469.  As fiduciaries of the Plan, Defendants are obligated to act for the exclusive benefit of participants, invest the assets of the Plan in a prudent manner, and ensure that the Plan's expenses are fair and reasonable.

The Plan is a large 401(k) defined contribution retirement plan for eligible employees of Prime Healthcare and certain affiliated participating companies.  *See*

Tang Decl., Ex. C, Summary Plan Description, at PrimeHealthcare_ERISA_0000765. During the Class Period, the Plan had more than 44,000 participants and account balances and assets totaling over $1.1 billion.   *See* Tang Decl., Ex. D, 2019 Annual Report/Return of Employee Benefit Plan, at Part II, ¶¶ 5–6, Schedule H, Part I.  Large plans, like the Plan, have significant bargaining power in the marketplace for retirement plan services, as well as the ability to demand low-cost administrative and investment management services.   *See* AC ¶ 4.   During the Class Period, Plan management and administration was applied uniformly to all participants.  *See, e.g.*, Tang Decl., Ex. A, at PrimeHealthcare_ERISA_0000469 (describing Plan investment objectives and roles and responsibilities of parties involved in Plan management and administration); Tang Decl., Ex. E, Investment Policy Statement for the Prime Healthcare Services, Inc. 401(K) Plan dated July, 2018 at PrimeHealthcare_ERISA_0000455–65.

The Committee selected and monitored (albeit insufficiently) the Active Suite as a single investment offering rather than monitoring the individual funds (*i.e.*, vintages) within the Active Suite.  Members of the Committee did not review the allocation of participants assets across individual vintages within the Active Suite. *See* Tang Decl., Ex. F, Deposition of Michael Heather ("Heather Dep."), at 182:7–11 (Q: Do you recall ever examining the number or percentage of participants who had all their assets in the plan invested in a single vintage of the target date funds?  A: I don't recall doing that.").   CAPTRUST Financial Advisors ("CAPTUST"), the investment advisor engaged on behalf of the Plan, scored the Active Suite as a whole—not individual vintages within the suite—when attributing scores to Plan investments.  *See* Tang Decl., Ex. G, Defined Contribution Quarterly Review, Second Quarter 2014, at PrimeHealthcare_ERISA_0002458 (Investment Policy Monitor). Minutes of the Committee's meetings reflect that the Active Suite was monitored, and any decisions were made, at the suite-level.  *See* Tang Decl., Ex. H, Minutes of September 27, 2017 Meeting, at PrimeHealthcare_ERISA_0001199 ("CAPTRUST

reviewed the Fidelity Freedom Funds with the Committee to ensure their understanding of the Plan's QDIA.").  Likewise, the other investments at issue in this action were retained on the Plan menu without distinction among participants.

From the beginning of the Class Period until August 1, 2019, the Plan paid fees for RK&A services on an asset-based rate (*i.e.*, percentage of the Plan's assets) and the fees were applied *pro rata* across participants' accounts.  *See* Tang Decl., Ex. I, 2014 Participant Disclosure, at PrimeHealthcare_ERISA_0000388;  Tang Decl., Ex. J, 2015 Participant Disclosure, at PrimeHealthcare_ERISA_0000396;  Tang Decl., Ex. K, 2016 Participant Disclosure, at PrimeHealthcare_ERISA_0000405;  Tang Decl., Ex. L, 2017  Participant Disclosure, at PrimeHealthcare_ERISA_0000412;  Tang Decl., Ex. M, 2018 Participant Disclosure, at PrimeHealthcare_ERISA_0000420.  Effective August 1, 2019, the Plan's fee structure changed from an asset-based rate to a per-participant fee of $50.  *See* Tang Decl., Ex. N, 2019 Participant Disclosure, at PrimeHealthcare_ERISA_0000428;  Tang Decl., Ex. O, 2020 Participant Disclosure, at PrimeHealthcare_ERISA_0000436.  Simply put, for the entirety of the Class Period, Plan participants and beneficiaries bore the Plan's RK&A expenses in equal (or proportionate measure).  Defendants' monitoring and retention of the Plan's RK&A arrangements, thus, affected members of the proposed Class in the same manner.

All of the conduct underlying Plaintiffs' claims was carried out at the plan level, without distinction among Plan participants.  Accordingly, individual Plan participants are similarly, if not identically, situated with respect to the conduct underlying the claims at issue in this Action.

## B.    The Plan's Losses

The losses resulting from Defendants' breaches of fiduciary duty may be measured on a Plan-wide basis and Plaintiffs proffer experts who, respectively, set forth methodologies for measuring the Plan's losses arising out of the retention of unsuitable investments and payment of excessive RK&A fees.

Martin Dirks is an expert on the retirement plan investment industry and related subjects.  *See* Tang Decl., Ex. P, Expert Report of Martin Dirks ("Dirks Report"), at ¶¶ 11–18, Exhibit 2 (Curriculum vitae for Martin Dirks).  Mr. Dirks' analysis demonstrates the losses caused by Defendants' retention of imprudent investments in the Plan may be measured on a Plan-wide basis.  Mr. Dirks first identified a suitable alternative replacement for each of the challenged investment utilizing an objective scoring system based on a composite of financial metrics that are standard in the investment management and retirement plan industries.  *See id.*, at ¶ 27.  Mr. Dirks then measured the difference in the Plan's terminal assets balances assuming replacement of the challenged investments with the replacements identified in the first stage of his analysis.  *See id.*, at ¶¶ 68–74, 77–81, 84–88.  In doing so, Mr. Dirks utilizes the Plan's asset balances in the challenged investments, implied net cash flows, and returns of the respective challenged investments and putative replacement investments.  *See id.*  The Plan's losses are equal to the difference between the Plan's terminal asset balance in the challenged investment and "but for" terminal asset balance in the putative replacement investment.  *See id.*, at ¶¶ 70, 73,79, 86.  Finally, since the accrual of new losses ends based on the time period represented in the data produced in the litigation, Mr. Dirks calculated the present value of the Plan's losses through the application of the returns of the replacement investment identified in the first stage of his analysis.  *See* Dirks Report, at ¶¶ 71, 80, 87.

Michael Geist is an expert on the retirement plan recordkeeping industry and the pricing of RK&A services for retirement plans.  *See* Tang Decl., Ex. Q, Expert Report of Michael Geist ("Geist Report"), at ¶¶ 8–25, Exhibit 2 (Curriculum Vitae of Michael Geist).  Mr. Geist's analysis demonstrates the losses arising out of the Plan's payment of excessive RK&A fees may be measured on a Plan-wide basis.  Mr. Geist derives a supportable estimate of the reasonable market rate for the Plan's RK&A services utilizing pricing data from similarly-sized defined contribution retirement plans with analogous pricing structures, as well as widely-understood pricing

dynamics in the marketplace for RK&A services.  *See id.*, at ¶¶ 524–60.  Mr. Geist then measures the Plan's losses by calculating the difference between the RK&A fees actually paid and the estimated reasonable market rate for the Plan's RK&A services.  *See id.*, at ¶ 561.  Mr. Geist calculates the present value of the Plan's losses through the application of the returns of the Vanguard Institutional Index (*i.e.*, an investable proxy for the S&P 500 index, a widely-recognized proxy for the United States stock market and the most widely used investment benchmark).  *See id.*, at ¶¶ 562–63.  Mr. Giest performs a similar "but for" analysis to measure the Plan's losses as a result of the Plan's payment of excessive fees to the Plan's Expense Budget Account, as well as the retention of excessively-priced share classes.  *See id.*, at ¶¶ 566–71.

### C.    Plaintiffs' Claims

First, Plaintiffs assert claims that Defendants have breached their fiduciary duties by selecting and retaining the Active Suite and certain other investments challenged in this Action.  Specifically, Plaintiffs allege that Defendants' selection and retention of the Active Suite in the face of significant red flags, including consistent underperformance and inordinate risk and expense, was a breach of their fiduciary duties.  *See* AC, ¶¶ 26–44.  Further, when Defendants belatedly replaced the Active Suite, they did so with the FIAM Blend Target Date Commingled Pool Suite (the "FIAM Blend Suite") as of July 1, 2019, which still costs at least three times more than the Index Suite, despite its inferior returns.  *Id.* ¶¶ 27 n.4, 43 n.11.  The choice of the FIAM Blend Suite, like the retention of the Active Suite, is indicative of the decision-making of fiduciaries who either did not understand their duties or, at a minimum, failed to diligently perform them, as required by ERISA.  *Id.*  In addition, Plaintiffs allege that Defendants breached their fiduciary duties by failing to appropriately monitor, and consequently maintaining, the other challenged

investments[2] despite warning signs including the excessive cost and significant underperformance of those investments. *See id.*, ¶¶ 45–53.

Second, Plaintiffs claim that Defendants breached their fiduciary duties by failing to appropriately monitor the Plan's investment management expenses. *See id.*, ¶¶ 56–57. Defendants offered participants an exceedingly expensive menu of investment options, which remained largely unchanged throughout the Class Period. In addition, Defendants failed to ensure that the Plan's investment options were in the least expensive available share class, a ready means of reducing fees to participants. *See id.*, ¶¶ 58–59.

Third, Plaintiffs assert claims that Defendants breached their fiduciary duties by causing the Plan to pay excessive RK&A fees. *See id.*, ¶ 53–55. Defendants caused the Plan to pay bundled RK&A fees averaging around $42, far in excess of the average annual cost for recordkeeping and administration services for plans much smaller than the Plan. *See id.* Given the size and negotiating power of the Plan, Defendants had the ability to obtain RK&A services for significantly less. Plan participants bear the burden of direct and indirect fees and, as a result, achieved considerably lower retirement savings than they otherwise would have, particularly when the impact of compounding is considered. *See id.*

Each of Plaintiffs' claims, which are based on Defendants' conduct in managing and administering the Plan as a whole, and for which Plaintiffs seek to recover losses on behalf of the Plan, are ideally suited for class treatment under Rule 23.

---

[2]In addition to the Active Suite, Plaintiffs allege that Defendants' deficient fiduciary process resulted in the retention of the following imprudent investments in the Plan: the Invesco Real Estate Fund, the Prudential Jennison Small Company Fund, the T. Rowe Price Mid-Cap Value Fund, and the Oakmark Equity and Income Fund. AC ¶¶ 46–52.

### D.     The Proposed Class

ERISA authorizes plan participants to bring an action on behalf of a plan to enforce ERISA's fiduciary duties and remedial provisions and to recover all losses to a plan caused by a breach of fiduciary duty.  *See* 29 U.S.C. §§ 1132(a)(2), 1109(a). Consistent with ERISA's remedial scheme, Plaintiffs brings this action "in a representative capacity on behalf of the [P]lan as a whole" to recover losses to the Plan caused by Defendants' breaches, and to obtain equitable relief." *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see also Lauderdale v. NFP Ret., Inc.*, 2022 WL 1599916, at *4 (C.D. Cal. Feb. 16, 2022).

Plaintiffs seek certification of the following proposed Class:

> All participants and beneficiaries in the Prime Healthcare Services, Inc. 401(k) Plan at any time on or after August 18, 2014 to the present, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

AC ¶ 66.  Members of the Class can be readily identified through participant account records in the custody of Defendants or the Plan's recordkeepers.

### III.    ARGUMENT

### A.     Class Certification Standard

Class certification under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); Fed. R. Civ. P. 23.[3]

---

[3]Courts also often assess whether "the members of the class are readily ascertainable." *See Bias v. Wells Fargo & Co*., 312 F.R.D. 528, 534 (N.D. Cal. 2015) (citations omitted).  To the degree Plaintiffs must show ascertainability, the Class certainly meets the mark.  Plaintiffs are each indisputably members of the Class, and the entire membership of the Class can be determined from the Plan's own records, so there can be no serious argument that these threshold requirements are not met.

While the court must conduct a "rigorous analysis" to determine whether the elements of Rule 23 have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id*.

It also bears considering that actions brought under ERISA § 502(a)(2) are brought in a representative capacity on behalf of a plan. *See Russell*, 473 U.S. at 142 n.9. In *Russell*, the Supreme Court emphasized that the text of § 409(a) characterizes the relevant fiduciary relationship as one "with respect to a plan," and repeatedly identifies the "plan" as the victim of any fiduciary breach. *See id*. at 140. The Court concluded, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id*. at 142. Since this Action alleges breaches of fiduciary duties that affected all Plan participants, not just a single individual account, it is appropriate for class certification. *See Kanawi*, 254 F.R.D. at 106–07.

**B.    Plaintiffs' Claims and the Proposed Class Satisfy Rule 23(a)**

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Amchem*, 521 U.S. at 613. Plaintiffs and the proposed Class satisfy each of the Rule 23(a) prerequisites.

1.    <u>The Class is Sufficiently Numerous</u>

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). However, "[i]mpracticability is not impossibility, and instead refers only to the 'difficulty or inconvenience of joining all members of the class.'" *Franco-Gonzales v. Napolitano*, 2011 WL 11705815, at *6 (C.D. Cal. Nov. 21, 2011) (finding that this

factor was "easily satisfied" with 2,766 vested plan participants) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)). While no specific number is needed to maintain a class action, "district courts in this Circuit have found that classes with as few as 39 members met the numerosity requirement" *See id.* Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirement where there are more than 11,000 putative class 23(a)'s numerosity requirement where there are more than 11,000 putative class members. *See id.*

### 2. There are Numerous Common Questions of Law and Fact

The commonality prerequisite of Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).[4] Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Courts in this Circuit find "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal quotation marks and citation omitted). Ultimately, commonality only asks the court to look "for some shared legal issue or common core of facts" and "requires the plaintiff to demonstrate the class members have suffered the same injury." *Id.* (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Actions involving breaches of fiduciary duty under ERISA §§ 409 and 502(a)(2) involve legal and factual questions that are inherently common to all

---

[4]"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting also that these requirements often merge with adequacy of representation). While this memorandum discusses the requirements separately, the discussions of each element are related and arguments supporting one requirement frequently support the others.

participants and beneficiaries of a plan.  The very nature of Plaintiffs' claims supports a finding of commonality.  Plaintiffs here are "bringing suit on behalf of participants in the Plan [], the centralized administration of which is common to all class members." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019).  "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Id.*; *see* 29 U.S.C. § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a *plan*.") (emphasis added).

The core questions in this Action are common to all Plan participants and include *inter alia*: (i) whether Defendants breached their fiduciary duties by failing to appropriately monitor the Plan's investments, and maintaining the Active Suite and other challenged investments in the Plan; (ii) whether Defendants breached their fiduciary duties by causing the Plan to incur excessive RK&A and investment management fees; (iii) whether the Plan suffered resulting losses; (iv) the manner in which to calculate the Plan's losses; and (v) what equitable relief, if any, is appropriate in light of any breaches found.  *See Clark*, 2018 WL 1801946, at *5.  While a single common question is sufficient to meet this standard, the common questions here are numerous.  *See Wal-Mart*, 564 U.S. at 359.

Like in *Clark*, Plaintiffs' claims and "each class member's claim [are] based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's recordkeepers and investments . . . [t]he same is true of the remedial theory, which is identical for the named plaintiffs and the class members." 2018 WL 1801946, at *5.  Since the critical issues in this litigation involve the acts and omissions of Defendants, they are common to all Plan participants who are empowered to bring an action on behalf of the Plan. *Kanawi*, 254 F.R.D. at 109.  The evidence required to answer the contentions in this action is Plan-level and, consequently, common to all of the Plan's participants.  If the evidence shows that Defendants breached their fiduciary duties, "it would not only generate answers

applicable to all class members, but would also address the heart of the claims at issue in this litigation." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 160 (S.D.N.Y. 2017). Appropriately, losses incurred as a result of Defendants' conduct are calculated on a Plan-wide basis. *See* Tang Decl., Ex. P, Dirks Report, at ¶¶ 68–74, 77–81, 84–88, 91–92; Tang Decl., Ex. Q, Geist Report, at ¶¶ 561–71. These answers do not depend on the particular circumstances of any individual participant because, in ERISA fiduciary breach actions, "liability is determined based on Defendants'[,] not Plaintiff['s] decisions." *Moreno v. Deutsche Bank Am. Holding Corp.*, 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017). The questions of law and fact in this action are, by their nature, common to each member of the proposed Class. *See id.* at 14. Indeed, there should be little dispute as to the commonality of questions of law and fact, as the central allegations concern Defendants' administration of the Plan. As such, because Defendants' duties and conduct ran to the Plan—not any individual participant—the commonality prerequisite is satisfied. *See Sacerdote v. New York Univ.*, 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018).

### 3.    Plaintiffs' Claims are Typical of a Class

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *See Kanawi*, 254 F.R.D. at 110 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (internal quotation marks omitted)). Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Id.*

Since claims under ERISA § 502(a)(2) are inherently representative claims, any participant's claim is necessarily typical of the claims of the Class; this is because every participant is asserting *the Plan*'s claim. Indeed, Plaintiffs bring this Action on

behalf of the Plan, such that "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 66 (M.D.N.C. 2008). Courts routinely find a participant's fiduciary breach claim to be typical of the claims of all participants in a plan. *See Cunningham*, 2019 WL 275827, at *7 (typicality requirement met where plaintiffs "sufficiently alleged that the defendants' failure to manage the Plans affected all proposed members of the class."); *Sacerdote*, 2018 WL 840364, at *3 (noting that analysis of the typicality factor is similar to the commonality analysis and finding because "[e]ach named plaintiff is asserting a claim on behalf of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance."); *Kanawi*, 254, F.R.D. at 110 (typicality met for fiduciary breach claims because "[n]one of the facts or legal claims are unique to the named Plaintiffs[]" since "[t]he complaint is based on allegations and recovery that address the Plan as a whole, not individual claimants").[5] The circumstances in this Class Action, in which Plaintiffs allege fiduciary breaches arising out of Defendants' management and administration of the Plan, are no exception.

The record confirms that Plaintiffs' and each Class members' claims "arise from the same course of conduct." *Clark*, 2018 WL 1801946 at *5; *see also supra* II.A. Defendants' Plan-wide conduct at issue in this action, employing a "disloyal and imprudent process for selecting, administering and monitoring the Plan's recordkeepers and investments," is of a kind routinely found to support determinations

---

[5]Because the commonality and typicality requirements "tend to merge," *Wal-Mart*, 564 U.S. at 349 n.5, Plaintiffs' claims are typical for many of the same reasons that commonality is satisfied. In short, because Defendants' actions were directed to and affected the Plan as a whole, without distinction among individual participants, the claims of all members of the proposed Class arise out of the same conduct. Likewise, Plaintiffs and all members of the proposed Class are bringing the same claims under the same legal and remedial theory.

of typicality. *Clark*, 2018 WL 1801946 at *5. Likewise, the remedial theory asserted by Plaintiffs here is identical among all members of the Class.

While Defendants may argue that purported statutory defenses or statute of limitations determinations defeat typicality, courts routinely find typicality satisfied in the face of such arguments. The evidence required to establish such defenses hinges on the Plan rather than on individual Plan participants, and individualized statute of limitations inquiries cannot defeat the many common legal and factual issues underlying the Participants' claims based on Plan-wide conduct. *See Kanawi*, 254 F.R.D. at 109 (rejecting defendants' argument that statutory affirmative defense would require individualized determinations); *see also Tatum*, 254 F.R.D. at 66 (same); *Clark*, 2018 WL 1801946, at *6-*7 (rejecting defendants' argument that statute of limitations issues defeat typicality); *Falberg v. Goldman Sachs Group, Inc*., 2022 WL 538146, at *9 (S.D.N.Y. Feb. 14, 2022) (explaining that this analysis is unchanged even after the Supreme Court's decision in *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768 (2020)).

Plaintiffs also anticipate that Defendants might argue individualized issues arising out of the structure of the Plan as a separate individual account plan, investment elections of individual participants, and preferences or risk tolerance of individual participants serve to defeat typicality. The Court has addressed and rejected this very argument. *See Urakhchin*, 2017 WL 2655678, at *5 (Staton, J.) (collecting cases) ("That the Plan participants may have separate individual accounts, invest in different funds, and obtain different returns on their investments (positive or negative), ***does not change the nature of their claims*** or the legal arguments they would make to prove Defendants' liability." (emphasis added)). ***"Regardless of which funds a particular Plan participant invested in . . . or why he or she invested in those funds, each Plan participant was investing through the same menu of investment options selected by Defendants."*** *Id.* (emphasis added). Likewise, as the Court explained in *Urakhchin*, the need to engage in a fund-by-fund analysis to prove Defendants'

liability does not change the class-wide nature of the Court's necessary findings. *Id.* Any argument to the contrary would be reflective of "a heightened sensitive to speculative conflicts among class members that is contrary to the law of this circuit.") *Id.* (quoting *Northrop Grumman*, 2011 WL 3505264, at *11 n.72).

In sum, Plaintiffs' claims on behalf of the Plan are typical of all Class members' claims and there are no issues requiring individualized determinations.

### 4. Plaintiffs and Class Counsel Will Protect the Interests of the Class

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent" and "evaluate competency and conflicts of class counsel." *Clark*, 2018 WL 1801946, at *7 (quoting *Amchem*, 521 U.S. at 625, n.20).

#### i. *Plaintiffs have no conflicts with other members of the Class and will vigorously prosecute this Action on behalf of the Class*

Plaintiffs' interests are tightly aligned with all other members of the proposed Class by virtue of the nature of plan-wide breach of fiduciary duty claims under ERISA. Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendants owed to the Plan and to recover the damages and equitable relief due to them. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Russell*, 473 U.S. at 142 n.9. "There is no reason to doubt that the name[d] plaintiffs will 'fairly and adequately protect the interests of the class,' as they have identical legal and effectively identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 WL 840364, at *4 (internal citation omitted) (quoting Fed. R. Civ. P. 23(a)(4)).

"The general rule that there is 'a relatively low likelihood of intra-class conflicts in cases of excessive fee claims' because the recovery is to the Plan, not to individual Plaintiffs, holds true here." *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (quoting *Leber*, 323 F.R.D., at 164).

Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the Class. Indeed, Plaintiffs and Class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. *See Moreno*, 2017 WL 3868803, at *7; *see also Continental Automotive, Inc*., 2018 WL 2480633 at *2 ("[T]here is no evidence of a direct conflict of interests between named Plaintiffs and the class they seek to represent.").

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiffs easily surpass. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Plaintiffs have demonstrated their commitment to pursuing this action on behalf of the Class. Plaintiffs understand the nature of their claims and duties as class representatives. *See* Ornelas Decl., ¶¶ 4, 7–11; Horton Decl¶¶ 4, 7–11; and Cervantes Decl., ¶¶ 4, 7–11. In addition, Plaintiffs have and will continue to vigorously prosecute this Action on behalf of all members of the proposed Class. To date, Plaintiffs have met and exceeded that duty by, inter alia: (a) providing information to counsel prior to the initiation of the action and reviewing pleadings and other court filings; (b) providing documents and assisting counsel in discovery matters; (c) maintaining communication with counsel and monitoring the progress of the litigation; and (d) sitting for depositions. *See* Ornelas Decl., ¶ 9; Horton Decl., ¶ 9; Cervantes Decl., ¶ 9. Moreover, Plaintiffs are committed to seeing this Action through to the end and undertaking any responsibilities required of them as class representatives, including continuing to assist counsel in discovery matters, participating in any mediation or other proceedings, and testifying at trial. *See* Ornelas Decl., ¶ 10; Horton Decl., ¶ 10; Cervantes Decl., ¶ 10; *see also Continental Automotive, Inc*., 2018 WL 2480633 at *2 ("Plaintiffs have demonstrated a willingness to prosecute the claims through participation in the discovery process."). Plaintiffs have monitored the progress of this Action and consulted with their counsel at each turn. *See Clark*, 2018 WL

1801946 at *9 ("The complex nature of ERISA fiduciary breach claims often requires investors to rely on their attorneys and hired experts and such reliance does not make the plaintiffs inadequate representatives.") (citation omitted).

> ii.    *Plaintiffs' counsel have no conflicts with the Class, are qualified and experienced, and will vigorously prosecute this Action on behalf of the Class*

Related to the adequacy inquiry, Rule 26(g) provides factors for the Court to consider in appointing counsel on behalf of a class:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Plaintiffs have engaged qualified and capable counsel, who have and will continue to vigorously prosecute this Action on behalf of the proposed Class. Plaintiffs are represented by Miller Shah LLP ("Miller Shah") and Capozzi Adler, P.C. ("Capozzi Adler"), two firms with significant experience litigating complex class actions, including ERISA actions, and which have the ability and resources to vigorously prosecute this action. *See* Tang Decl., ¶¶ 27–29.  To date, Miller Shah and Capozzi Adler have pursued and protected the interests of the Class, as evidenced by their advancement of this case, including the filing of detailed, comprehensive pleadings, briefing of several motions, and substantial discovery efforts.  Miller Shah and Capozzi Adler satisfy Rule 23(g) and should be appointed as Class counsel ("Class Counsel").

### C.    Plaintiffs and the Proposed Class Satisfy Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613-14. Rule 23(b)(1) provides:

A class action may be maintained if Rule 23(a) is satisfied and . . . prosecuting separate actions by or against individual class members would create risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23 (b)(1).

Actions under Sections 409 and 502(a)(2) of ERISA for breach of fiduciary duty present a "paradigmatic example" of a Rule 23(b)(1) class. *Kanawi*, 254 F.R.D. at 111–12; *see also Munro*, 2019 WL 7842551, at *10 ("Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries.") (citations omitted). For the reasons discussed below, certification is appropriate under either subpart of Rule 23(b)(1). *See Clark*, 2018 WL 1801946, at *9–*10 (finding that plaintiffs established basis for certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B)).

> 1.    The Class Satisfies the Requirements of Rule 23(b)(1)(A)

Rule 23(b)(1)(A) applies to "cases where the party is obligated by law to treat the members of the class alike[.]" *Amchem*, 521 U.S. at 614 (internal quotations and citation omitted); see also Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A) ("One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct."). "The language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to

ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike." *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (internal alterations omitted).

Plaintiffs allege that Defendants breached their fiduciary duties in the management and administration of the Plan; "if this is the case, that duty was breaches as to all [P]laintiffs." *Sacerdote*, 2018 WL 840364, at *6 (emphasis in original). Indeed, allowing more than 44,000 individual Class members to pursue an action on behalf of the Plan could result in varying adjudications over whether Defendants: (a) breached their duties and committed other violations of ERISA; (b) are liable for any breaches; and (c) how to measure damages to the Plan and accord any other relief to which the plan is entitled. *See Lauderdale*, 2022 WL 1599916, at *7 (the Court found Rule 23(b)(1)(A) class certification to be appropriate because "[a]llowing individual suits to proceed would create a risk of 'inconsistent and varying' adjudications, resulting in 'incompatible standards of conduct' for Defendants." (citing *Kanawi*, 254 F.R.D. at 111)); *see also Clark*, 2018 WL 1801946, at *9 ("Separate actions over whether the defendants' investment procedures and management methods violated their fiduciary duties could result in decisions that place incompatible requirements on the defendants in terms of either the losses that defendants would have to pay back to the Plan, or the requirements for obtaining future Plan services, or both.").

The Plan's governing documents provide for the uniform treatment of participants. *See supra* II.A. Thus, adjudication of Plaintiffs' claims and those of other members of the Class in separate proceedings would result in a substantial risk of incompatible standards of conduct for Defendants—current fiduciaries of the Plan—with a prospective impact on the Plan's management and administration. *See Munro*, 2019 WL 7842551, at *10 (citing *Kanawi*, 254 F.R.D. at 111).

2.    The Class Satisfies the Requirements of Rule 23(b)(1)(B)

"Rule 23(b)(1)(B) covers class action suits in which 'individual adjudications as a practical matter[] would be dispositive of the interests of the other members not

parties to individual actions." *Cunningham*, 2019 WL 275827 at *7 (quoting *Wal-Mart*, 564 U.S. at 361 n.11).  "[A]n action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders of beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is a typical Rule 23(b)(1)(B) action.  Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (quoting Advisory Committee Note); *see also Leber*, 323 F.R.D. at 165 ("[ERISA] creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants."). Additionally, "because Defendants' alleged conduct was uniform with respect to each participant, adjudicating Plaintiffs' claims, as a practical matter, would dispose of the interests of the other participants or substantially impair or impede their ability to protect their interests." *Jacobs v. Verizon Commc'ns Inc.*, 2020 WL 4601243, at *14 (S.D.N.Y. June 1, 2020), *R. & R. adopted*, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) (internal alteration omitted) (quoting *Moreno*, 2017 WL 3868803, at *8).

Here, "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects the interests of absent class members . . . [as] the suit involves the 'presence of property which call[s] for . . . management." *Ortiz*, 527 U.S. at 834 (internal quotation and alteration omitted); *see also Tatum*, 254 F.R.D. at 67 ("due to ERISA's distinctive representative capacity and remedial provisions, class treatment under Rule 23(b)(1)(B) is appropriate" (citations and quotations omitted)).  Defendants' conduct was directed at the Plan as a whole, rather than individual participants; accordingly, "any judgment on Defendants' liability would necessarily affect the determination of any claim for [] relief for this same conduct brought by other Plan participants in any concurrent or future actions." *Moreno*, 2017 WL 3868803, at *8 (quoting *Urakhchin*, 2017 WL 2655678, at *8).

Likewise, "individual adjudications would be dispositive of the interests of the other participants not parties to the individual adjudications, because the claims concern the same actions in managing the Plan and because damages are owed to the Plan as a whole and not individual plaintiffs." *Id.*; *Tatum*, 254 F.R.D. at 67 ("Mr. Tatum brings his claims on behalf of the Plan and seeks recovery to the Plan.  In this posture, resolution of this case 'would, as a practical matter, be dispositive of the interests of the other participants [sic] claims on behalf of the Plan.'") (quoting *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007)); *see also Northrop Grumman*, 2011 WL 3505264, at *16 (certifying class under Rule 23(b)(1)(B)).  Accordingly, any determination of Defendants' liability will bear on the claims of all members of the Class.

At bottom, because "[P]laintiffs' allegations are brought with respect to breaches of fiduciary duties to the Plan[] as a whole, [D]efendants' duties rise and fall with all plaintiffs."  *See Northrop Grumman*, 2011 WL 3505264, at *16; *see also Cunningham*, 2019 WL 275827, at *8 (same); *Leber*, 323 F.R.D. at 165 (same).  These are textbook circumstances for certification under either Rule 23(b)(1)(A) or Rule 23(b)(1)(B).

### D. Proposed Class Counsel Meet the Requirements of Rule 23(g)

Related to the adequacy of representation inquiry under Rule 23(a)(4), in appointing counsel for the proposed Class, this Court must consider the factors enumerated in Rule 23(g)(1)(A):

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Miller Shah and Capozzi Adler are exceedingly qualified under these factors, and this Court should appoint Miller Shah and Capozzi Adler as Class Counsel in this

action.   To date, Miller Shah and Capozzi Adler have used their experience and resources to vigorously pursue this litigation and protect the interests of all members of the Class.   The firms have done significant work identifying and investigating the Class members' claims, beginning with their several months before filing suit.   *See* Tang Decl., at ¶¶ 5–6, 8–9.   This work included investigating the claims and analyzing significant data.   In addition, Miller Shah and Capozzi Adler, with the assistance of Plaintiffs, have drafted and filed detailed pleadings, briefed several dispositive and procedural motions, and engaged all parties in the discovery process to date.   Miller Shah and Capozzi Adler have significant experience handling ERISA matters and have knowledge of the applicable law.   *See id.*, at ¶¶ 27–29.   In addition, Miller Shah and Capozzi Adler have and will commit the necessary resources to pursue the best outcome for the proposed Class.   *See id.*

The Court should appoint Miller Shah and Capozzi Adler as Class Counsel.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons and other appearing on the record, the Court should certify this Action as a class action under Rules 23(a) and 23(b)(1), appoint Plaintiffs as Class Representatives, and appoint Miller Shah LLP and Capozzi Adler P.C. as Class Counsel.

DATED: July 7, 2023                    Respectfully submitted,


/s/ Kolin C. Tang_____
Kolin C. Tang (SBN 279834)
MILLER SHAH LLP
19712 MacArthur Boulevard
Suite 222
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

James E. Miller (SBN 262553)
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
        lrubinow@millershah.com

James C. Shah (SBN 260435)
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com

Mark K. Gyandoh
Gabrielle Kelerchian
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: gabriellek@capozziadler.com
        markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

*Counsel for Plaintiffs, the Plan,
and the Proposed Class*