1  DARREN E. NADEL, Bar No. 154417
2  dnadel@littler.com
   LITTLER MENDELSON, P.C.
3  1900 Sixteenth Street, Suite 800
   Denver, CO 80202
4  Telephone: 303.362.2861
   Facsimile: 303.362.8230
5  [*additional counsel listed on signature page*]

6  *Attorneys for Defendants*
   *Prime Healthcare Services, Inc. and the*
7  *Administrative Committee of the Prime*
   *Healthcare Services, Inc. 401(k) Plan*

8

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Prime Healthcare ERISA Litigation* | Case No. 8:20-cv-1529-JLS (JDEx) |
| | **DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | Date: [Date]<br>Time: [Time]<br>Judge: Josephine L. Staton<br>Dept: [Dept] |
| | Trial Date: None |
| | Complaint Filed: August 18, 2020 |
| | Filed Concurrently With: |
| | 1. Declaration of Wesley E. Stockard |

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................ 2

    A.   Plaintiffs' Limited Claims and the Plan .................................................. 2

    B.   Plaintiffs' Individually Invested in Only a Limited Set of the Plan's Overall Investments ............................................................................... 3

    C.   Plaintiffs' Broad Proposed Class Includes Every Plan Participant Regardless of Investment Selection or When They Joined the Plan ........ 4

    D.   The Divergent Economic Interest In And Among Named Plaintiffs' And the Putative Class Members .......................................... 4

III.   ARGUMENT ................................................................................................. 6

    A.   Plaintiffs' Certification Motion Should Be Denied as Untimely .............. 6

    B.   Despite Delaying Filing For Class Certification For Nearly Two Years, The Evidence Developed Conclusively Demonstrates Plaintiffs Cannot Carry Their Legal Burden to Demonstrate Class Certification Is Proper. ...................................................................... 8

        1.   The Evidence Developed During Plaintiffs' Unexplained Delay Conclusively Demonstrates That Rule 23(a)'s Requirements Are Not Met. ........................................................ 9

        2.   Plaintiffs Have Failed to Establish That the Proposed Class Should be Certified as a Mandatory Class Action Under Rule 23(b)(1). ................................................................. 18

IV.   CONCLUSION ............................................................................................ 20

LITTLER
MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amalfitano v. Google, Inc.*,
  No. 14-cv-00673, 2015 WL 456646 (N.D. Cal. Feb. 2, 2015) ........................11

*Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*,
  222 F.3d 52 (2d Cir. 2000) ....................................................................10

*In re Bendectin Prods. Liability Litig.*,
  749 F.2d 300 (6th Cir. 1984) ..................................................................19

*Califano v. Yamasaki*,
  442 U.S. 682 (1979).................................................................................8

*Casa Orlando Apts., Ltd. v. Fed. Nat. Mortgage Ass'n*,
  624 F (5th Cir. 2010) ..............................................................................19

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...................................................................................9

*In re Conagra Foods, Inc.*,
  90 F. Supp.3d 919 (C.D. Cal. 2015)........................................................20

*Cooper v. Fed. Reserve Bank of Richmond*,
  467 U.S. 867 (1984)...............................................................................10

*Davison v. O'Reilly Auto Enters., LLC*,
  968 F.3d 955 (9th Cir. 2020) ....................................................................7

*General Telephone Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)...............................................................................10

*Huegel v. City of Easton*,
  2002 WL 32348320 (E.D. Pa. Oct. 23, 2022) ........................................20

*Lanier Construction, Inc. v. Carbone Properties of Mobile, L.L.C.*,
  No. 06-0070, 2006 WL 8437948 (S.D. Ala. July 31, 2006) ................7

*Marlo v. United Parcel Service, Inc.*,
  251 F.R.D. 476 (C.D. Cal. 2008)........................................................8, 15

LITTLER
MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

ii

# TABLE OF AUTHORITIES
(continued)

**Page**

*Marshall v. Northrop Grumman Corp.*,
No. CV 16-06794 AB (JCX), 2017 WL 2930839 (C.D. Cal. Jan. 30, 2017) ................................................................................................... 13

*Munro v. University of Southern California*,
No. 16-06191, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019.) ................... 17, 18

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ......................................................................... 9

*Ortiz v. Fireboard Corp.*,
527 U.S. 815 (1999) ..................................................................................... 10

*In re Packaged Seafood Prod. Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017) ....................................................... 11

*Paulsen v. CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009) ...................................................................... 11

*Spano v. Boeing*,
633 F.3d 574 (7th Cir. 2011) ................................................................... 12, 14

*Taylor v. Enterprise Rent-A-Car Co.*,
No. 10-1849, 2011 WL 13214090 (C.D. Cal. June 24, 2011) ...................... 11

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ................................................................................. 8

*Urakhchin v. Allianz Asset Management of America, L.P.*,
No. 15-1614, 2017 WL 2655678 (C.D. Cal. June 15, 2017) (Staton, J.) ..... 16, 17

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ....................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......................................................................... 8, 14, 15, 18

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

4

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...................................................................18, 19

5

6

**Statutes**

7

ERISA ..................................................................................................................19

8

**Other Authorities**

9

Local Rule 23-3 .....................................................................................................6

10

Local Rule 9 ...........................................................................................................6

11

Local Rule 23 .................................................................................................1, 8, 9

12

13

Local Rule 23(a) ..............................................................................................8, 14

14

Local Rule 23(a)(3) ..............................................................................................14

15

Local Rule 23(a)(4) ..............................................................................................10

16

Local Rule 23(a)'s ...........................................................................................9, 10

17

Local Rule 23(b) .............................................................................................8, 20

18

Local Rule 23(b)(1) ..............................................................................................18

19

Local Rule 23(b)(1)(A) ...................................................................................18, 19

20

Local Rule 23(b)(1)(A) and Rule 23(b)(1)(B) ......................................................18

21

Local Rule 23(b)(1)(B) .................................................................................18, 19, 20

22

23

24

25

26

27

28

LITTLER MENDELSON,
P.C.
1900 Sixteenth Street
Suite 800

## I.    INTRODUCTION

Long after the close of fact and expert discovery, and on the eve of trial and without any further opportunity to develop evidence that could assuage concerns about how divergent interests and differing theories of liability could be managed effectively on behalf of all members of the putative class, Plaintiffs Brian Horton, Paulina Cervantes, and Maria Ornelas ("Plaintiffs") ask the Court, in an untimely motion, to certify a class of all participants and beneficiaries in the Prime Healthcare Services, Inc. 401(k) Plan ("Plan") from August 18, 2014 to the present. In representing to this Court that they are adequate representatives to advance claims on behalf of their putative class, Plaintiffs ignore ***uncontradicted expert evidence*** establishing multiple conflicts of interest between and among the Plaintiffs, and that the theories of recovery advanced in their Complaint leave 69% of the putative class worse off. This uncontroverted evidence affirmatively establishes the claims alleged by Plaintiffs are obviously not common or typical among the putative class as required for the class to be certified under Rule 23, as the vast majority stand to receive nothing even if Plaintiffs prevail. Thus, granting Plaintiffs' request to certify the putative class would bind these absent class members to Plaintiffs' theories of recovery, which do not help the vast majority of them, as they are on the eve of trial and no longer subject to modification. And, under Plaintiffs' Motion, the putative class would be barred from developing and pursuing other theories of recovery related to the Plan's investments, share classes, and recordkeeping fee charges. Plaintiffs offer no justification for why such a result is in the best interests of the putative class, or how this Court can adequately protect the divergent interests of the putative class members—a fact that unequivocally confirms they are not adequate representatives for the broad putative class they seek to certify.

Unlike many of the cases Plaintiffs rely on, this is not a case where a minority of the putative class inadvertently benefitted from imprudent choices by mere luck or by virtue of the timing of their investment decisions. Instead, here, unrefuted expert evidence developed by Defendants establishes that a significant majority (69%) of the

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

putative class would be worse off with Plaintiffs' claims. Only a small minority of the putative class—and Plaintiffs' lawyers—would benefit from a verdict upholding the choices Plaintiffs say the Plan Committee (the "Committee") should have made. Further, because Plaintiffs' expert calculated putative class damages by netting the losses and gains within each Challenged Fund, including the various vintages of the Fidelity Freedom Fund Target Date Funds (the "Active TDFs"), even the small minority of putative class members who theoretically have recoverable damages under Plaintiffs' theories would have those claims adjudicated in a way that does not serve their best interests, because this calculation serves to reduce their purported losses.

Given this evidence—which Plaintiffs chose not to address through an expert rebuttal report—it is apparent that Plaintiffs cannot adequately serve as representatives of the proposed putative class to advance the claims set out in their Complaint. And, given the unique posture of this certification motion—filed out of time and on the eve of trial, after the close of all discovery—the flaws in adequacy, typicality and commonality, discussed in more detail below cannot be remedied through separate subclasses or the substitution of some "more adequate" named Plaintiff.

Accordingly, the Court should deny Plaintiffs' Motion.

## II.   BACKGROUND

### A.   <u>Plaintiffs' Limited Claims and the Plan</u>

Plaintiffs allege Defendants breached their fiduciary duty by (1) selecting and retaining the Active TDFs as an investment option in the Plan over the passively managed iteration of the Fidelity Freedom Funds (the "Index Suite"), (2) retaining four other investment options in the Plan (the Invesco Fund, the Prudential Jennison Fund , the T. Rowe Price Fund, and the Oakmark Fund[1]) (collectively with the Active TDFs, the "Challenged Funds"), (3) retaining share classes in four investment options that

---

[1] Plaintiffs' loss calculation expert does not attribute any losses to the Defendants' decisions regarding the Oakmark Fund and the T. Rowe Price Fund.  (Ex. 05, ¶¶64-65, 89-92.)

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

2

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

were allegedly too expensive prior to August 1, 2019[2], and (4) having a recordkeeping fee that was allegedly too high (the "Challenged Recordkeeping Fee").

Plaintiffs' imprudent investment claims focus on the Active TDFs, which consist of thirteen different "vintages"[3] that are targeted to an individual's age and anticipated retirement date. As the target date fund ("TDF") approaches that anticipated retirement date, it moves away from riskier growth investments and toward more conservative investments that preserve capital. Therefore, each "vintage" within a suite of TDFs, including the Active TDFs, is invested differently in any given year. (Dkt. #16, ¶¶25–52.)

With respect to Plaintiffs' recordkeeping fee claim, the Plan paid a fee to Transamerica Services, Inc. ("Transamerica"), to provide recordkeeping and other services to the Plan. (*See* Dkt. 100-2, ¶¶40-77.) At the start of the putative class period, the fee was asset-based, such that each Plan participant paid a fee amounting to a percentage of the assets in their individual accounts. (*Id.*) Starting in August 2019, the Plan moved to a flat, per participant record keeping fee. At the same time, the Company began paying that recordkeeping fee for active Plan participants (*i.e.*, current Prime employees.) (*Id.* at ¶¶76-77.)

## B.   Plaintiffs' Individually Invested in Only a Limited Set of the Plan's Overall Investments

Plaintiff Ornelas invested in the American Funds EuroPacific Growth fund, the Putnam Equity & Income Fund, the Metropolitan West Total Return Bond, the Delaware Small Cap Value fund, the Goldman Sachs Growth Opportunities fund, the Invesco International Small Company fund, the Loomis Sayles Small Cap Growth fund, the MassMutual Select MidCap Growth fund, the Prudential Jennison Fund, the Prudential Jennison Growth fund, the T. Rower Price Fund, and the Putnam Equity

---

[2] Plaintiffs' damages expert does not analyze losses arising from the share classes specifically challenged in the Complaint, instead advancing brand new theories of share class liability never disclosed by Plaintiffs during fact discovery. (Ex. 06, ¶¶570-571; *compare* Dkt. #16, ¶58.)
[3] The Active TDFs contain 10 separate funds that are each based on the potential retirement date year of the participant. (Ex. 01 to Declaration of Wesley. E. Stockard).

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

3

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Income Fund. (Ex. 02.) Plaintiff Horton invested only in the Active TDF 2050 vintage. (Ex. 03.) Plaintiff Cervantes invested in the Oakmark Fund and the Active TDF 2045 vintage. (Ex. 04.)  *No Plaintiff* invested in the Invesco Fund.

**C.    Plaintiffs' Broad Proposed Class Includes Every Plan Participant Regardless of Investment Selection or When They Joined the Plan**

Plaintiffs seek certification of the following putative class:

> All participants and beneficiaries in the Prime Healthcare
> Services, Inc. 401(k) Plan at any time on or after August 18,
> 2014 to the present, including any beneficiary of a deceased
> person who was a participant in the Plan at any time during
> the Class Period.

(Motion at 9.) Despite this broad class definition and the Plan offering approximately 40 total investment options during the Relevant Period, Plaintiffs only advance claims against a few of the Plan's funds, as noted above. (*See supra* at 2-3.)

**D.    The Divergent Economic Interest In And Among Named Plaintiffs' And the Putative Class Members**

Plaintiffs have divergent economic interests amongst themselves and with respect to the putative class they seek to represent. Defendants retained economic expert Lucy Allen ("Ms. Allen") to analyze the economic interests of the Named Plaintiffs and absent class members had the Defendants made the alternative choices Plaintiffs claim they should have made.[4] Ms. Allen's unrebutted analysis establishes:

- Plaintiffs Cervantes, Horton, and Ornelas would have been *worse off* by $395, $202, and $43, respectively, if the Committee had replaced the Challenged Funds and changed the recordkeeping fee as alleged in the Complaint (Ex. 07, ¶¶28-31);

- Focusing solely on the Challenged Funds, Plaintiffs Cervantes and Horton would have been *worse off* by $449 and $200, respectively, if the Committee had replaced the Challenged Funds as alleged in the Complaint

---

[4] Ms. Allen analyzed the theories advanced through Plaintiffs' Complaint, and also responded to Plaintiffs' experts' theories (which are entirely different from the theories outlined in the Complaint and were not otherwise disclosed or developed in fact discovery). (Ex. 07; Ex 08.)

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

4

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

(*id.* at ¶¶32–33);

- Focusing solely on the recordkeeping fee claim in the Complaint, Plaintiffs Horton and Ornelas would have been *worse off* by $2 and $45, respectively, if the Committee had made changes to the recordkeeping fee as outlined in the Complaint (*id.* at ¶¶35–36);

- Applying Plaintiffs' theories of recovery as outlined in the Complaint to the putative class, *"69% of Plan participants, or 57,725 out of 84,102 Plan participants, would have been worse off if the Plan had adopted Plaintiffs' Alternative Funds and an annual $14 per participant recordkeeping fee[5]"* (*id.* at ¶43);[6]

- Analyzing Plaintiffs' challenge to the Active TDFs, Ms. Allen showed that Plan participants who target their retirement to be in later years would be better off if Defendants had selected the Index Suite whereas participants who are planning to retire earlier would be *worse off* (*id.* at ¶¶57–58).

After the close of fact discovery, Plaintiffs' expert, Martin Dirks, completely abandoned Plaintiffs' theory of recovery with regard to the Active TDFs, proposing alternative TDFs without regard for whether they were actively or passively managed. For example, Dirks did not even consider the Index Suite identified in the Complaint as a proper replacement. (*See* Dkt. #16 at ¶¶25-52.) Indeed, Dirks suggested the best alternative investment for the Active TDFs would have been other actively managed funds. (Ex. 06, ¶¶66-67.) He also suggested best alternative investments for the

---

[5] Plaintiffs' Complaint contains an unsupported allegation that the reasonable recordkeeping fee for the Plan was as low as $14 per participant, although this allegation was abandoned by their expert who found the reasonable fee would have been $34 per participant. (Dkt. #16 at ¶¶53-55; Ex. 06, ¶¶553-555).
[6] This analysis, which is unrebutted, conclusively demonstrates the frivolity of the allegations in Plaintiffs' Complaint, which is why Plaintiffs had to completely abandon those allegations, including their theory that it was improper to select and retain the Active TDFs over the passively managed Fidelity Freedom Funds Index Suite. Plaintiffs did not develop any evidence of how the allegations in the Complaint apply to the putative class or otherwise offer any rebuttal to Ms. Allen's report, such that it is the only evidence of record assessing the impact of the alleged alternative choices advanced in the Complaint on the putative class.

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

remaining Challenged Funds that differed from the alternative funds in the Complaint (*Id.*, ¶¶75-90.)

Accordingly, in her rebuttal report, Ms. Allen performed analyses of how Plaintiffs and putative class members would have fared with the investment options Dirks selected. Ms. Allen's ***unrebutted*** report establishes:

- Plan participants in various vintages of the Active TDFs would have been worse off with Dirks' alternative TDFs (Ex. 08, ¶¶71–72);
- Regarding Dirks' alternatives to the remaining Challenged Funds, Ms. Allen's analysis shows that half of the Plaintiffs (at the time)[7] and many other Plan participants would have been worse off with Dirks' preferred alternative funds (*id.*, ¶¶74–84.)

Plaintiffs never rebutted Ms. Allen's conclusions, and they never provided evidence that would allow for subclasses to be devised that could address these differences among putative class members and their experiences with the Challenged Funds and recordkeeping fee. This is true despite the fact that Plaintiffs and their experts had the same participant-level transaction data that was provided to Ms. Allen. (Declaration of Wesley E. Stockard at ¶4; *see also* Ex 07, ¶¶22-25.)

## III.   ARGUMENT

### A.   Plaintiffs' Certification Motion Should Be Denied as Untimely.

Central District of California's Local Rule 23-3 states that "[a]t the earliest possible time after service of a pleading purporting to commence a class action … but no later than any deadline set by the assigned judge, the proponent of the class must file a motion for certification that the action is maintainable as a class action." C.D. Cal. L.R. 23-3. In addition, Rule 9 of the applicable judicial procedures for this case states that "filing of a class certification motion [should occur] within six to nine months of the scheduling conference." *See* Judge's Procedures (9 – Class Action Scheduling

---

[7] Plaintiffs have withdrawn Marie Nellist as a Named Plaintiff since Ms. Allen's original analysis. (Dkt. #91.)

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Issues), *available at* https://www.cacd.uscourts.gov/honorable-josephine-l-staton. Here, Plaintiffs waited 27 months after the scheduling conference to file their motion. (*Compare* Dkt. #35; *with* Dkt. #98.)

Plaintiffs have offered no justification for the roughly 18-month delay in filing their Motion, nor for the fact that they chose to set the hearing for this Motion on December 1. (Dkt. # 98.) As a result, despite being on the eve of the final pretrial conference, Defendants have no clarity as to whether the case to be tried involves only the individual claims of the Plaintiffs or instead the broad claims of a putative class, which prejudices Defendants' ability to appropriately plan for trial. *See Lanier Construction, Inc. v. Carbone Properties of Mobile, L.L.C.*, No. 06-0070, 2006 WL 8437948 at *1 (S.D. Ala. July 31, 2006) (denying motion to amend complaint as prejudicial to defendant's developed pretrial strategy); *see also Davison v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 964-965 (9th Cir. 2020) (affirming district court's denial of class certification motion for failing to follow local procedures on timeliness of class certification filing).

Plaintiffs' delay in filing this Motion also makes the various conflicts between and among the members of the putative class impossible to remedy through subclasses. Ms. Allen identified multiple conflicts of interest within the putative class. (Ex. 07, ¶¶41-62.) By way of example, it is obvious that Plan participants who were active employees of Prime suffered no harm after August 1, 2019 from any alleged "excessive" recordkeeping fee, as Prime began paying that fee for all active employees at that time. (*Id.*, ¶14.) Further, many of the Challenged Funds—the Invesco Fund, the Oakmark Fund, the Prudential Fund, and the Active Suite—were all removed from the Plan during the Relevant Period. (*Id.*, p. 7.) Putative class members who did not become participants in the Plan until after these funds were removed could not have suffered any injury from them.

Still further, the only evidence of damages developed by Plaintiffs' expert lumps together the performance of participant investments in the Challenged Funds across the

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
303.629.6200

7

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

entire class period, including all vintages of the Active TDFs. (Ex. 05, ¶¶68-64; *see also* Ex. 12 159:12-163:1.) Yet, Ms. Allen identified that there were certain vintages of the Active TDFs that ***never*** underperformed the alternative suitable funds advanced by Dirks. (Ex. 08, ¶¶72-73.) Putative class members invested in these vintages suffered no harm under Plaintiffs' theory of recovery—regardless of when they entered or left the Plan.

Given that Plaintiffs have waited so long to bring their Motion and have it heard, the evidentiary record is now closed and there is no evidence Plaintiffs have offered to parse the differences identified by Ms. Allen or otherwise isolate subclasses in a way to certify them in compliance with applicable Supreme Court precedent. *Compare TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citation and internal marks omitted) ("Every class member must have Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."); *see also Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 487 n. 10 (C.D. Cal. 2008) (concluding it was too late to divide proposed class into subclasses because discovery was closed).

Accordingly, Plaintiffs' untimely Motion should be denied.

**B.** **Despite Delaying Filing For Class Certification For Nearly Two Years, The Evidence Developed Conclusively Demonstrates Plaintiffs Cannot Carry Their Legal Burden to Demonstrate Class Certification Is Proper.**

A plaintiff seeking class certification must meet all the requirements of Rule 23(a) and one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Plaintiffs bear the burden of showing that these requirements are met because "the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).

Particularly at this very late stage of litigation, Rule 23 is "not []a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, Plaintiffs are required to demonstrate with "evidentiary proof" that the requirements of Rule 23

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

8

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

are met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) The Ninth Circuit has established that "[t]he standard of proof applicable to evidence proffered to meet" Rule 23's requirement is a "preponderance of the evidence." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022).

Courts have consistently recognized that the Rule 23 "analysis will frequently entail 'overlap with the merits of plaintiff's underlying claim,' … because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast*, 569 U.S. at 33-34 (quoting *Dukes*, 564 U.S. at 351). Given the conflicts identified by Ms. Allen, this analysis is particularly important here because "[s]erious conflicts of interests can impair adequate representation by the named plaintiffs, ***yet leave absent class members bound to the final judgment, thereby violating due process***." *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018) (emphasis added.)

### 1. The Evidence Developed During Plaintiffs' Unexplained Delay Conclusively Demonstrates That Rule 23(a)'s Requirements Are Not Met.

The record evidence demonstrates the theories advanced by Plaintiffs in the Complaint result in a watered-down economic benefit to only 31% of the putative class members, and no economic benefit to the remaining 69% of the putative class. (Ex. 07, ¶43.) Thus, certifying the broadly defined putative class to pursue these relatively limited theories of recovery deprives the remaining 69% of the putative class of the opportunity to develop their own evidence and pursue theories that may benefit them. Further, the 31% who may receive *some* benefit under Plaintiffs' theories in the Complaint have competing motivations as to what claims should be vigorously pursued. Plaintiffs' expert's method for calculating damages nets gains and losses on a quarterly basis for each Challenged Fund (including all vintages of the Active TDFs), which results in the losses for this 31% being netted down by the offsetting gains of the majority. For these reasons, Plaintiffs have failed to establish the Proposed Class

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
303.629.6200

satisfies Rule 23(a)'s adequacy, commonality and typicality requirements, as demonstrated more fully below.

> **a.**   **Plaintiffs Have Clear Conflicts Amongst Themselves and the Proposed Class that Make Them Inadequate Class Representatives.**

Rule 23(a)(4) seeks to vindicate "the constitutional requirement … that 'the named plaintiff at all times adequately represent the interests of the absent class members,'" who will be bound by the outcome of the litigation. *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 848 n. 24 (1999) (quoting *Phillips Petroleum Corp. v. Shutts*, 472 U.S. 797, 812 (1985)), Specifically, the adequacy requirement asks "whether … the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157, n. 13; *see also Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs completely fail to meet this requirement here.

> **(1)**   **Conflicts Regarding Plaintiffs' Challenged Funds.**

Here, the undisputed expert analysis of Ms. Allen establishes that Plaintiffs' theory of recovery would benefit only 31% of the putative class they seek to represent. (Ex. 07, ¶43.) Specifically, 69% of absent putative class members will gain absolutely nothing from Plaintiffs' prosecution of the theories alleged in the Complaint, yet they will be bound by any result here and precluded from bringing their own claims in which they could make different arguments. In other words, if it is truly the case that Defendants acted imprudently, one would expect the majority of the putative class to be harmed and, consequently, there should be alternative funds in which the majority would have been better off. But that is not the evidence that Plaintiffs developed, and, if Plaintiffs' Motion is granted, the absent class members would be deprived of the opportunity to develop their own evidence that might lead to some kind of positive recovery for themselves. *See*, *e.g.*, *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   members in any subsequent litigation."); *Taylor v. Enterprise Rent-A-Car Co.*, No. 10-
2   1849, 2011 WL 13214090, at *4 (C.D. Cal. June 24, 2011) ("[T]he 131,495 members
3   of the Withrow class who did not opt out of the case are bound by the Withrow
4   settlement; their claims have been extinguished and they cannot re-litigate their claims
5   in Plaintiffs' separate class action."); *Amalfitano v. Google, Inc.*, No. 14-cv-00673,
6   2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) ("As a class member who did not
7   timely opt out, Plaintiff is therefore bound by the class settlement, and by res judicata.
8   . ..").

9       Even more importantly, Ms. Allen's analysis demonstrated that the each of the
10  three remaining Plaintiffs in this case would be worse off under the theories of recovery
11  articulated in the Complaint. (Ex. 07 at ¶¶28 –31). Thus, ***Plaintiffs do not benefit from***
12  ***the theories of recovery being pursued by counsel***, and they have no motivation to see
13  them prosecuted aggressively and to conclusion. And, because this undisputed evidence
14  from Defendants' expert shows that Plaintiffs were not injured due to the alleged
15  misconduct, they lack constitutional standing to pursue the claims alleged and are
16  fundamentally inadequate class representatives. *See Paulsen v. CNF Inc.*, 559 F.3d
17  1061, 1072 (9th Cir. 2009) (explaining that constitutional standing requires an "injury
18  in fact" and a "causal connection between the injury and the conduct complained of");
19  *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1096 (S.D. Cal.
20  2017) (explaining that named plaintiff cannot adequately serve as class representative
21  without Article III constitutional standing).

22      Even if Plaintiffs had standing that would permit them to serve as representatives
23  of the putative class, Plaintiffs would be inadequate because Ms. Allen's analysis shows
24  they have direct, irreconcilable conflicts as to which theories of recovery most benefit
25  them and should be prioritized for prosecution.   For example, analyzing the
26  performance of the Challenged Funds as compared to the alternative funds alleged in
27  the Complaint, Ms. Allen demonstrated that Plaintiff Ornelas would have minimally
28  benefitted in Plaintiffs' alternative investments (by $2), while Plaintiffs Cervantes and

11

Horton would have been worse off by $449 and $200, respectively. (Ex. 07, ¶¶32-34.) Thus, while Plaintiff Ornelas may have some limited desire to litigate a claim of imprudence with respect to fund selection, Cervantes and Horton have no such desire, and would rather focus Plaintiffs' prosecution of the case elsewhere.

Plaintiffs' counsel's attempts to present evidence of entirely new theories of liability through their expert witnesses only underscore these conflicts and emphasize the inadequacy of the named Plaintiffs. For example, when examining the alternative funds touted by Dirks—which are different from those in the Complaint—Ms. Allen demonstrated that Plaintiff Cervantes would have been worse off while Plaintiffs Ornelas and Horton would have minimally benefitted. (Ex. 08, ¶¶79-84.) Thus, Horton has motivation to pursue claimed damages based on Dirks' proposed alternative funds, while Ornelas is left wondering whether to advocate for pursuit of a claim based on the alternatives in the Complaint, and Cervantes has **no motivation** to see the prosecution of either theory because she stands to gain nothing under either approach.

As another example, Plaintiffs Cervantes and Horton invested in the 2045 and 2050 vintages of the Active TDFs, and Ms. Allen demonstrated that participants who invested in those vintages would have minimally benefitted from Dirks' alternative funds at various points. (Ex. 08, ¶¶72-73.) However, Plan participants who invested in other vintages – including participants who were closer to retirement – would have been worse off at every point in time with Dirks' alternative funds. (*Id.*) Plaintiffs cannot adequately represent the interests of the putative class, binding them all to the same judgment, when the evidence establishes such a divergence of interests among the members of the putative class and between and among Plaintiffs themselves.

Even more alarming, despite being challenged as an imprudent investment selection in the Complaint, **no Plaintiff invested in the Invesco Fund at all**. Not one single Plaintiff in the case has interest in seeing any time or effort spent on the prosecution of this theory of liability on behalf of the putative class, nor constitutional standing to pursue it. *See, e.g., Spano v. Boeing*, 633 F.3d 574, 586-88 (7th Cir.

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
303.629.6200

12
DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

2011)("[A] class representative in a defined-contribution case would *at a minimum* need to have invested in the same funds as the class members.") (emphasis added); *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB (JCX), 2017 WL 2930839, at *7 (C.D. Cal. Jan. 30, 2017) (dismissing complaint for lack of standing where it alleged a breach of fiduciary duty based on the underperformance of a specific named fund, but did not allege that any named plaintiff was invested in that fund.)

### (2)   Conflicts Regarding Plaintiffs' Challenged Recordkeeping Fee.

Plaintiffs' inadequacy is further underscored by the direct conflicts that extend to their recordkeeping fee claim. Using an assumption of a $14 or $21 per participant fee that Plaintiffs claimed, without any support, was reasonable in their Complaint. (Dkt. #16, ¶¶53-55), Ms. Allen demonstrated that Plaintiff Cervantes would have benefitted, while Plaintiffs Horton and Ornelas would have been worse off.[8] (Ex. 07, ¶¶35-36.) Thus, while Cervantes has motivation to prosecute the recordkeeping fee claim asserted in the Complaint vigorously, Horton and Ornelas have no interest in seeing such a claim pursued. And, the dynamics are exacerbated by Geist's proposed "reasonable" per-participant fee of $34 per participant, since this would further decrease Plaintiffs Horton and Ornelas's desire to prosecute the claim that $34 (as opposed to $14 or $21) is the "reasonable" fee.

Boiled down to its essence, the evidence in the record affirmatively shows that Plaintiffs are not adequate representatives for the claims advanced in this case. Despite having Ms. Allen's report that identified all of the various inadequacies and conflicts between and among Plaintiffs and members of the putative class, Plaintiffs did not develop any rebuttal or otherwise offer a solution to account for stark and material differences in the potential claims of putative class members as compared to their own.

---

[8] The variance in the recordkeeping fee paid by the Plaintiffs is a result of the differences in their account balances, because prior to August 1, 2019, all Plan participants paid an asset-based fee that was calculated based on their individual account balances. (Dkt. #100-2, ¶¶40-77.) Thus, those with lower asset balances would be better off with the asset-based fee charged by Transamerica, while those with higher balances who would be better off with a flat fee advanced by Plaintiffs. (Ex. 07, ¶64.)

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

And, given the late filing of this Motion, no longer have any opportunity to do so. For these reasons, Plaintiffs cannot carry their burden of demonstrating that they are adequate representatives of the Proposed Class they seek to represent.

### b. Plaintiffs' Theories of Recovery are not Common or Typical of the Proposed Class

For the same reasons, Plaintiffs have not established their claims are common or typical of the putative class. The Supreme Court has recognized, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge…." both with each other and the adequacy of representation requirement set out above. *Dukes*, 564 U.S. at 349 & n.5 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982)). To establish commonality, a plaintiff must show the claims of the class "depend upon a common contention" that is "capable of classwide resolution," which means "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 349-350. Similarly, "[t]o establish typicality under Rule 23(a)(3), the party seeking certification must show there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. To meet these requirements, Plaintiffs must show that their "incentives … are aligned with those of the class." *Schering Plough*, 589 F.3d at 598 (citation omitted.) It is not enough that Plaintiffs' "legal theory and legal claims" be typical of those of the class. *Id.* at 598. Rather, "the ***individual factual circumstances*** underlying [Plaintiffs'] legal theory and legal claims" must be typical as well. *Id.* (emphasis added.)

In this case, ***uncontradicted expert evidence*** establishes that 69% of the putative class would be worse off if the theories advanced in Plaintiffs' Complaint are successful. Thus, under any examination, the broad putative class did not "suffer[] the same injury" as the alleged injury being advanced in this litigation and "the individual factual circumstances underlying [Plaintiffs'] legal theory and legal claims" are

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    decidedly atypical of 69% of the putative class. *Dukes*, 564 U.S. at 350; *Schering*

2    *Plough*, 589 F.3d at 598.

3         This point holds true even if Plaintiffs' theories of liability are parsed

4    individually. As noted above, with respect to Plaintiffs' challenge to the Plan's selection

5    of the Active TDFs, Plaintiffs' experts lumped all vintages of the Active TDFs together,

6    even though different vintages performed so differently from each other that some

7    outperformed the alternative TDF funds alleged in the Complaint and/or the alternative

8    funds identified by Dirks throughout the entire class period, while others

9    underperformed those same funds for a portion or all of that time. (*See supra* at 4-5.)

10   Those participants in the Active TDFs whose TDF vintage outperformed the

11   alternatives urged by Plaintiffs have no recoverable losses and will be bound to a

12   judgment that does not in any way benefit them. And, Plan participants whose TDF

13   vintage underperformed the alternatives urged by Plaintiffs will have their recovery

14   based on these alleged theories of imprudence diminished since Plaintiffs' expert has

15   aggregated loss across all vintages of the Active TDFs, necessarily offsetting their

16   losses with the gains of other investors.[9] Although these differences were clearly

17   identified by Defendants in Ms. Allen's expert report, Plaintiffs have not even attempted

18   to account for this varying performance and explain how their theories of recovery

19   nevertheless adequately advance claims that are common or typical of the putative class.

20        This is not a hypothetical scenario. Ms. Allen demonstrated these conflicting

21   results by calculating that, as of the filing of the Complaint (Q4 2020), Plan participants

22   invested in five of the thirteen vintages of the Active TDFs were *worse off* if the Plan

23   invested in Dirks' alternative American Fund TDFs than the Active TDFs. (*Supra* at 4-

24   5.) Moreover, as of the last date that Dirks actually analyzed Plan data (Q3 2021), the

25   majority of Active TDF vintages (9 out of 13) would have been worse off in the

26

---

27   [9]  As previously noted, the Court cannot remedy this problem by creating subclasses of
     the different vintages because it is too late to develop and analyze evidence of those
28   potential claims, as would be required to create such a subclass. *See Marlo*, 251 F.R.D.
     at 487, n. 10.

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

American Fund TDFs selected by Dirks. (*Id.*) And, as noted above, those who would have been better off in the American Fund TDFs have their damages diminished by those who did better in the Active TDFs, thus reducing any recovery they could obtain while still binding them fully to a judgment.

Plaintiffs' challenge to the prudence of the Plan's recordkeeping fee has the exact same flaws. Ms. Allen's analysis shows the theory Plaintiffs' developed for their recordkeeping fee claim benefits Plan participants who had relatively more money in their accounts at the expense of Plan participants who had relatively less money in their accounts. (*Supra* at 5.) This is because an asset-based fee costs less for those who have less assets to which the percentage charge is applied, so many Plan participants paid less for their recordkeeping fee than the alleged "reasonable" fee identified in the Complaint or by Plaintiffs' expert Michael Geist. (Ex. 07, ¶64; *see also* Ex. 06, ¶¶561-565 (showing calculated "reasonable" fee as $34 per participant – higher than Ms. Allen's calculations using the $14 and $21 per participant fee alleged in the Complaint.) The position of all putative class members with respect to the Plan's recordkeeping fee is therefore not typical or common across the board.

In prior cases analyzing class certification motions for claims alleging breaches of ERISA's fiduciary duties, this Court has recognized that in order for class certification to be appropriate, plaintiffs must advance a theory of recovery that would benefit plan participants as a whole, specifically because once a class is certified, any claims the absent class members may have related to the same underlying facts and circumstances will be disposed of. *See Urakhchin v. Allianz Asset Management of America, L.P.*, No. 15-1614, 2017 WL 2655678 (C.D. Cal. June 15, 2017) (Staton, J.) Specifically, in *Urakhchin*, this Court noted that "Plaintiffs' theory of liability is common to proposed class and pertains to the manner in which *Defendants' alleged mismanagement of the Plan and breached their fiduciary duties with respect to the Plan as a whole.*" *Id.* at *8 (emphasis added.) This Court also noted that "resolution of one action against one Plan participant **would necessarily affect the resolution of any**

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

16

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*concurrent or future actions by other Plan participants*." *Id.* (emphasis added.) In *Urakhchin*, this Court rejected defendants' argument regarding potential conflicts between plaintiffs and the proposed class because they were "speculative." (*Id.*) Here, however, the conflicts summarized in this Opposition are the subject of uncontroverted evidence established by Ms. Allen's unrebutted reports.

Importantly, Defendants are not making the argument rejected by *Munro v. University of Southern California*, No. 16-06191, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019.). There, the court rejected the defendants' argument against class certification based on the contention that individuals who benefitted from their allegedly imprudent choices (*i.e.*, individuals who would have been worse off in plaintiffs' preferred world) would have to "disgorge their profits" to defendants. 2019 WL 7842551, at *7. The court reasoned that "[t]he harm alleged by Plaintiffs is not zero-sum. In other words, Plan participants fortunate enough to prosper despite the alleged breaches did not do so at the expense of those who suffered." *Id.*

Here, Defendants are advancing an entirely different argument. Specifically, Plaintiffs' cumulative calculation of losses across all vintages of the Active TDFs (and the entire class period for the other Challenged Funds), means that they are depressing the ultimate damages calculation by presenting an overall aggregate potential loss that pits the interests of putative class members interests directly against each other. This is why aggregate damage assessments such as those offered by the Plaintiffs and their purported experts cannot advance claims that are common or typical of the putative class.

The cases Plaintiffs cite are inapposite to the unique circumstances they have backed themselves into here. As demonstrated by Ms. Allen's **unrebutted** analysis, Plaintiffs' misguided claims have led them to develop evidence of so-called "loss" that doesn't apply **to the vast majority of the individuals they seek to represent in the putative class** and improperly aggregates damages, such that their evidence dilutes the net recovery for the small minority that is actually better off under their theories of

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

recovery.  Thus, this is not a case where a minority of the putative class were "fortunate enough to prosper despite the alleged breaches," *see Munro*, 2019 WL 7842551 at *7; here, the theories and evidence that Plaintiffs developed over the course of the past three years does not benefit the majority of the putative class members they seek to represent, and dilute the remaining claims of the minority.

Accordingly, Plaintiffs have failed to carry their burden to establish common or typical evidence sufficient to certify the putative class.

### 2. Plaintiffs Have Failed to Establish That the Proposed Class Should be Certified as a Mandatory Class Action Under Rule 23(b)(1)

Plaintiffs assert that both Rule 23(b)(1)(A) and Rule 23(b)(1)(B) are satisfied here, but the developed record establishes they have not satisfied either prong. As an initial matter, Rule 23(b)(1) classes are mandatory, without due process notice or opt-out rights. Because of this the Supreme Court has cautioned that courts should narrowly apply this rule. *Dukes*, 564 U.S. at 345.

Rule 23(b)(1)(A) applies where "separate actions by … individual class members would create risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for [Defendants]." Fed. R. Civ. P. 23(b)(1)(A). "The phrase 'incompatible standards of conduct' refers to situations where 'different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (quoting 7A Charles Alan Wright et al., Federal Practice & Procedure § 1773 at 431 (2d ed 1986)). Rule 23(b)(1)(B) applies only when there is a risk that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

Here, there is no risk of incompatible conduct from inconsistent adjudications, nor is there a risk that individual actions would be dispositive of the interests of other

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

18

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OF THE INTERESTS OF OTHER

1   class members. Indeed, the only risk presented by Plaintiffs' Motion is that absent class
2   members will be bound to a litigation – already at the eleventh hour – that has not
3   advanced their interests, thus depriving these absent Plan participants of their due
4   process rights.

5       Plaintiffs claim that Defendants violated the duty of prudence under ERISA by
6   offering the Challenged Funds and failing to secure a lower recordkeeping fee. (*See*
7   *supra* at 3-4.) If an individual Plan participant were to prevail on such claims, the result
8   might be "adjudications … that would establish … standards of conduct" requiring
9   Defendants to remove imprudent Plan options, take remedial steps with respect to fees,
10  and restore Plan losses from the alleged imprudence. But an unsuccessful action by
11  some other Plan participant would not establish *any* "standard of conduct" for
12  Defendants, much less any standards that would somehow be "incompatible" with those
13  established by a successful Plan participant. To this end, courts have consistently held
14  that "[t]he fact that some plaintiffs may be successful in their suits against a defendant
15  while others may not, is clearly not a ground for invoking Rule 23(b)(1)(A)." *In re
16  Bendectin Prods. Liability Litig.*, 749 F.2d 300, 305 (6th Cir. 1984); *see, e.g.*, *Casa
17  Orlando Apts., Ltd. v. Fed. Nat. Mortgage Ass'n*, 624 F,3d 185, 197-198 (5th Cir. 2010)
18  ("An incompatible judgment would arise if one court *required* Fannie Mae to continue
19  its relationship with GMACCM while another court *prevented* Fannie Mae from
20  working with GMACCM. Such a scenario is implausible given the facts of this case.")
21  This longstanding principle applies here – there is no outcome from the individualized
22  claims of the Plaintiffs that would create incompatible standards of conduct impacting
23  the absent class members.[10]

24      Plaintiffs' argument under Rule 23(b)(1)(B) is similarly flawed. Certification
25  under this rule is only appropriate where an individual lawsuit will "inescapably [] alter
26  the substance of the rights of others having similar claims." *Zinser*, 253 F.3d at 1196 –

27
28  _____
    [10] Plaintiffs also have very little understanding of underlying claims prosecuted here, further underscoring the importance of analyzing the rights of the putative class. (*See* Exs. 09-11.)

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1197. But the mere fact that a decision in one case might serve as legal precedent in another is not a persuasive reason to recognize a class action. *Id.* at 593; *see also In re Conagra Foods, Inc.*, 90 F. Supp.3d 919, 990 fn. 207 (C.D. Cal. 2015) (denying class where individualized decisions did not support class certification); *Huegel v. City of Easton*, 2002 WL 32348320, at *5 (E.D. Pa. Oct. 23, 2022) ("[T]he individualized nature of the claims are not dispositive of subsequent cases, and, as a result, class certification under Rule 23(b)(1)(B) is inappropriate.") Indeed, Plaintiffs' developed evidence would have the exact opposite effect here. Specifically, if Plaintiffs were permitted to proceed on a classwide basis based on the evidence they developed during this litigation, the majority of the absent class members would have their rights to prove the alleged imprudence of Defendants taken away from them without due process. Thus, certification of the putative class as proposed by Plaintiffs' would establish a situation where Plaintiffs would "inescapably" harm the substance of the rights of the absent class members.

Accordingly, Plaintiffs have failed to establish that their Proposed Class satisfies any of the requirements of Rule 23(b) and, therefore, their Motion should be denied.

## IV.   CONCLUSION

For the reasons stated herein, this Court should deny Plaintiffs' Motion and force them to proceed to trial on their own claims.

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
303.629.6200

20

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Dated:  November 9, 2023

By: */s/ Darren E. Nadel*
DARREN E. NADEL
Bar No. 154417
BRADLEY J. CROWELL
*(admitted pro hac vice)*
LITTLER MENDELSON, P.C.
dnadel@littler.com
bcrowell@littler.com
1900 16th Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile:  303.629.0200

WESLEY E. STOCKARD
*(admitted pro hac vice)*
RACHEL P. KAERCHER
(admitted pro hac vice)
LITTLER MENDELSON, P.C.
wstockard@littler.com
rkaercher@littler.com
3424 Peachtree Road, NE, Suite 1200
Atlanta, GA 30326
Telephone: 404.443.3502
Facsimile:  404.393.5353

PAMELA S.C. REYNOLDS
(admitted pro hac vice)
LITTLER MENDELSON, P.C.
preynolds@littler.com
375 Woodcliff Drive, Suite 2D
Fairport, NY  14450
Telephone: 585.203.3415
Facsimile:  585.486.1706

SARA ZIMMERMAN
Bar No. 300549
LITTLER MENDELSON, P.C.
szimerman@littler.com
18565 Jamboree Road, Suite 800
Irvine, CA  92612
Telephone: 949.705.3076
Facsimile:  949.724.1201

*Attorneys for Defendants*
*Prime Healthcare Services, Inc. and the*
*Administrative Committee of the Prime*
*Healthcare Services, Inc. 401(k) Plan*

4858-1667-3925.13 / 057592-1233

LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO  80202
303.629.6200

21

DEFENDANTS' MEMORANUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION