James C. Shah (SBN 260435)
MILLER SHAH LLP
19712 MacArthur Boulevard, Suite 222
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com

*Counsel for Plaintiffs, the Plan, and the Proposed Class*

[Additional Counsel Listed Below]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Prime Healthcare ERISA Litig.* | Case No. 8:20-cv-1529-JLS (JDEx) <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Hearing Date: December 1, 2023 <br> Hearing Time: 10:30 a.m. <br> Judge: Hon. Josephine L. Staton <br> Courtroom: 10A <br> Initial Complaint Filed: August 18, 2014 |

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................... ii

Memorandum of Points and Authorities ................................................................... 1

I.    INTRODUCTION ............................................................................................ 1

II.    BACKGROUND .............................................................................................. 2

III.   ARGUMENT .................................................................................................... 3

      A.    The Motion is Timely and Should be Considered on the Merits .......... 3

      B.    Class Certification is Proper .................................................................. 7

          1.    Each of the Rule 23(a) Prerequisites are Satisfied ...................... 7

               i.    Commonality ..................................................................... 7

               ii.   Typicality ........................................................................... 8

               iii.  Adequacy ......................................................................... 11

          2.    The Class may be Certified Under Rule 23(b)(1) .................... 13

IV.   CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold v. Arizona Dept. of Public Safety*,
   233 F.R.D. 537 (D. Ariz. 2005) ................................................................... 5

*Boley v. Universal Health Servs., Inc.*,
   36 F.4th 124 (3d Cir. 2022) ............................................................... *passim*

*Buttino v. F.B.I.*,
   1992 WL 12013803 (N.D. Cal. Sept. 25, 1992) ........................................ 5

*Clark v. Duke Univ.*,
   2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) .......................................... 8

*Davidson v. O'Reilly Auto. Enters., LLC*,
   968 F.3d 955 (9th Cir. 2020) ...................................................................... 6

*Gray v. Greyhound Lines*,
   545 F.2d 169 (D.C. Cir. 1976) .................................................................... 5

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ..................................................................... 11

*In re Spring Ford Indus.*,
   2004 WL 231010 (Bankr. E.D. Pa. 2004) .................................................. 5

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) ............................................................... 8

*Khan v. Board of Directors of Pentegra Defined Contribution Plan*,
   2023 WL 6256204 .................................................................................... 10

*Lanier Constr., Inc. v. Carbone Properties of Mobile, L.L.C.*,
   2006 WL 8437948 (S.D. Ala. July 31, 2006) ............................................ 6

*Mattson v. Milliman, Inc.*,
   2023 WL 7350523 (W.D. Wash. Oct. 6, 2023) .................................. 9, 12

*Munro v. University of Southern California*,
  2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) ........................................................ 11

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ................................................................................ 10

*Tracey v. MIT*,
  2018 WL 5114167 (D. Mass. Oct. 19, 2018) ........................................................ 12

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .......................................................................................... 7

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  2017 WL 2655678 (C.D. Cal. June 15, 2017) ................................................*passim*

*Wright v. Schock*,
  742 F.2d 541 (9th Cir. 1984) ................................................................................. 5

**Rules**

Fed. R. Civ. P. 23 .............................................................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs respectfully submit this Reply in support of their Motion for Class Certification (ECF No. 98, the "Motion").[1]

### I. INTRODUCTION

In the Motion, Plaintiffs established all grounds for class certification. Without a legitimate answer, Defendants parade arguments that range from frivolous to brazenly dishonest. It is necessary to recalibrate.

First, the Motion is timely under the Court's rules. Defendants' assertion to the contrary ignores the Court's procedures in place when the Motion was filed and otherwise omits the portions of the relevant procedures and rules bearing on the timing of class certification motions in this action. In any event, courts in the Ninth Circuit and around the country strongly favor the resolution of certification motions on the merits, even if untimely made (though Plaintiffs' was not), when adverse parties would suffer no prejudice.

Second, Defendants' contention that there is any meaningful evidence that Plaintiffs' theories of recovery would leave class members worse off—much less the 69% repeated throughout their Opposition—is patently untrue. This number, varnished by Defendants' proffered expert, is based on certain comparators pled in the complaint but either fundamentally misunderstands or ignores Plaintiffs' actual theory of recovery and the manner in which losses are calculated in actions of this type. In addition, Defendants' assertion (on which their expert concededly relied) that Plaintiffs' claim that the Plan paid excessive recordkeeping fees somehow means any participants would pay more is false. These mischaracterizations are at the core of each of Defendants' arguments opposing certification. Properly understood, they provide no basis whatsoever to deny certification. Far from establishing conflicts

---

[1] Capitalized terms shall have the same meaning as in the Motion.

among members of the proposed Class above an entirely speculative level, this "evidence" speaks volumes about the weakness of Defendants' arguments.

Third, the Opposition fails to meaningfully engage with current doctrine concerning class certification in ERISA breach of fiduciary duty actions, most notably omitting any mention of *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124 (3d Cir. 2022), **the seminal Circuit case** addressing the exact commonality and typicality issues they raise, not to mention a closely-analogous decision by this Court, *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017) (Staton, J.). These authorities, grounded in a proper understanding of the structure of defined contribution plans, the types of investments at issue, and the derivative nature of ERISA § 502(a)(2) claims, decisively foreclose Defendants' arguments.

Notwithstanding Defendants' unfortunate efforts to mislead, class certification is warranted.

## II. BACKGROUND

The Motion discussed Plaintiffs' claims and theories of liability based on Defendants' procedural imprudence and resulting retention of imprudent investments and payment of excessive fees. The Opposition takes aim at Plaintiffs' theory of recovery—namely, the manner in which Plaintiffs establish the Plan's losses.

Plaintiffs proffer experts who measure the losses caused by Defendants' alleged breaches on a Plan-wide basis. Consistent with well-established methods adopted in ERISA litigation, Mr. Dirks identified suitable alternative replacements for each of the challenged investments utilizing an objective scoring system and measured the difference in the Plan's terminal asset balances assuming replacement of the challenged investments with those he identified. Since the accrual of new losses ends with the period represented in the data produced, Mr. Dirks calculated the present value of the Plan's losses through the application of the returns of the replacement investment identified in the first stage of his analysis. Mr. Geist measured the

difference between the Plan's recordkeeping fees and estimated reasonable market rate for the Plan's recordkeeping services based on a separate analysis with which Defendants do not quibble for purposes of the Motion.

Defendants offer Ms. Allen's[2] opinions in an attempt to establish that certain individual class members would be "worse off" if Plaintiffs' theory of recovery is successful. On the investment claim, however, Ms. Allen's opinion that 69% of Plan participants would be worse off *ignores* Plaintiffs' theory of recovery and Mr. Dirks' analysis, instead comparing the performance of Plan investments only to certain comparators pled in the complaint (to which neither logic nor the law binds Plaintiffs) rather than the suitable alternatives identified by Mr. Dirks.

On the recordkeeping claim, Ms. Allen incorrectly assumes that Plaintiffs' contention that the Plan should have paid recordkeeping fees of no more than $34 per participant is equivalent to the contention that *every participant* should have paid exactly $34. Not so. Plaintiffs allege that the Plan should have been paying total fees amounting to no more than $34 per participant annually, but Plaintiffs do not suggest that every participant should have paid that amount. Rather, prudent fiduciaries would have negotiated reasonable total fees for the Plan and then allocated them appropriately (whether as flat fee per participant, *pro rata* by assets, or otherwise).

**I.   ARGUMENT**

**A. The Motion is Timely and Should be Considered on the Merits**

The Motion is not untimely under the applicable rules or procedures and Defendants' argument is a transparent effort to distract from the merits. If anything is untimely, it is **Defendants' objection**, as they have been on notice for months of the timing of Plaintiffs' motion—including in advance of its filing—and never once expressed a concern.

---

[2] Ms. Allen's slanted perspective is clear, as she has *never* offered an opinion that participants in a retirement plan are without individualized issues and conflicts. *See* Berin Decl., Ex. 1, at 19:24–20:9.

Defendants begin by citing to Local Rule 23-3, but ignore that the Court's procedures when Plaintiffs filed the Motion provided, "***Plaintiffs in a putative class action need not comply with Local Rule 23-3*** . . . ." *See* Procedures, at 9, https://bit.ly/3u2UZ1h. Moreover, the Court's applicable procedures indicate that it "does not defer setting a pretrial schedule until after the class certification issues have been resolved." *Id.* The Scheduling Order did not set a class certification deadline and, despite Defendants' implication to the contrary, a scheduling conference was not held. *See* ECF No. 35 (vacating scheduling conference and setting various deadlines). Subsequently, the Parties stipulated to modify the scheduling order in light of a mediation, which continued the pending case deadlines by over two months (a fact Defendants omit) and set July 7, 2023 as the "Last Day to File Motions (Excluding Daubert Motions and all other Motions in Limine)." *See* ECF No. 74. Although Defendants point to the Court's preferences regarding certification motions, they also omit any reference to the immediately following sentences which indicate that the Court will ordinarily set a briefing schedule if one is not proposed by the Parties. While no separate briefing schedule was entered, it is clear that the Parties each understood the relevant deadline was July 7, 2023.

Expert discovery concluded on May 5, 2023. *See* ECF No. 74. In fact, on May 2, 2023, during Mr. Dirks' deposition by Defendants' counsel, they repeatedly indicated their expectation that Plaintiffs were seeking class action treatment and examined Mr. Dirks on numerous topics germane to the Motion. *See, e.g.*, Berin Decl., Ex. 2, at 100:13–101:16.

On June 30, 2023, the parties conferred pursuant to Local Rule 7.3 and Plaintiffs communicated their intention to file the Motion, as well as the grounds for the Motion. *See* Berin Decl., at ¶ 4. Defendants expressed no concern about the timeliness of the Motion. *See id.*, at ¶ 5.

Plaintiffs filed the Motion on July 7, 2023 and noticed the Motion for hearing on December 1, 2023 based on the Court's then-available hearing dates. Again, if

Defendants held any legitimate concerns about the timeliness of the Motion, they withheld such concerns. Defendants appear to suggest there is something untoward about the date on which Plaintiffs noticed the Motion for hearing given the final pretrial conference on December 15, 2023, but Defendants themselves agreed to a joint request to have the Motion relisted for hearing on December 15, 2023. Accordingly, any suggestion that Defendants might somehow be prejudiced by the relative timing of the Motion date and final pretrial conference is plainly contrived.

Even assuming the Motion was unduly delayed (it was not), "where a lawsuit fulfills the requirements of a class action, the fundamental objective of facilitating judicial economy supports a finding that a motion for class certification should not be defeated where the motion is somewhat untimely." *Buttino v. F.B.I.*, 1992 WL 12013803, at *5 (N.D. Cal. Sept. 25, 1992); *see also Gray v. Greyhound Lines*, 545 F.2d 169, 173 n. 11 (D.C. Cir. 1976) (failure to seek certification in a timely fashion is not fatal to continuing class treatment). Indeed, "[c]ourts applying Rule 23, as amended, do not deny class certification based on timeliness unless the delay has prejudiced a defendant." *Arnold v. Arizona Dept. of Public Safety*, 233 F.R.D. 537, 541 (D. Ariz. 2005) (citing *In re Spring Ford Indus.*, 2004 WL 231010 (Bankr. E.D. Pa. 2004) (finding consideration of certification motion timely where motion was made four years after commencement of action but delayed by discovery schedule and attempted mediation).[3] The Ninth Circuit has also recognized that courts may proceed on merits issues before class certification. *See Wright v. Schock*, 742 F.2d 541, 543 (9th Cir. 1984). Defendants cannot claim prejudice since they have known since the **initial pleading** that Plaintiffs seek class treatment. *See Buttino*, 1992 WL 12013803, at *5 ("[B]ecause the defendant has been aware of plaintiff's attempts to

---

[3] A previous version of Rule 23 required certification motions to be brought "[a]s soon as practicable after the commencement of an action brought as a class action." *Arnold*, 233 F.R.D. at 541 (quoting Fed. R. Civ. P. 23). This version was amended to allow "more flexibility[.]" *Id.*

- 5 -

add class allegations since September 1990, defendant is not prejudiced by certifying the class[.]").

Defendants cite two cases in support of their argument. The first does not involve a motion for class certification, but a motion for leave to file an amended complaint to add a new claim. *See Lanier Constr., Inc. v. Carbone Properties of Mobile, L.L.C.*, 2006 WL 8437948, at *1 (S.D. Ala. July 31, 2006). The court in *Lanier* found that the time to amend by right and under the scheduling order had passed, *see id.*, and that a new claim would cause a reversion of all deadlines despite a scheduled trial. Defendants have fully prepared their case with the understanding that Plaintiffs seek to proceed on a class-wide basis, and the certification motion is one of several motions the Court will resolve before trial without other effect on the schedule. In the second case cited by Defendants, the Ninth Circuit found that a court did not abuse its discretion when it found a certification motion untimely where the motion was not filed before a **specific deadline** set by the court and the plaintiff failed to later renew her motion. *See Davidson v. O'Reilly Auto. Enters., LLC*, 968 F.3d 955, 964–65 (9th Cir. 2020). Defendants do not contend that Plaintiffs failed to meet a deadline set by the Court. To the contrary, Plaintiffs filed the Motion before the deadline for motions other than *Daubert* motions and motions *in limine*. The Ninth Circuit itself in *Davidson* recognized that "a district may abuse its discretion if it unreasonably applies rules in a way that deprives a party of an opportunity to present . . . a motion for class certification[.]" 968 F.3d at 963 (citations omitted).

Defendants also take a haphazard swipe at Plaintiffs' standing. But Plaintiffs do not lack standing, as they each suffered demonstrable injuries through the payment of excessive recordkeeping fees (notwithstanding Ms. Allen's mischaracterization of Plaintiffs' theory) and invested in challenged funds in which Plaintiffs will prove a related loss at trial.[4] Defendants do not address *Boley*, but the decision explains

---

[4]Defendants and Ms. Allen *themselves* acknowledge Plaintiffs' standing while advancing a different argument. *See* Memo., at 12 ("Ms. Allen demonstrated that

exactly why these circumstances are sufficient to demonstrate standing after *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021):

> The decision to offer the [Active Suite] was, in effect, one decision . . . the alleged failure to continuously evaluate management fees affected all funds in the Plan in the same way . . . To establish standing, class representatives need only show a constitutionally adequate injury flowing from those decisions or failures.

*See Boley*, 36 F.4th at 132 ("Article III does not prevent [plaintiffs] from representing parties who invested in funds that were allegedly imprudent due to the same decisions or courses of conduct.").

The Court clearly should consider the Motion on the merits.

### B. Class Certification is Proper

#### 1. Each of the Rule 23(a) Prerequisites are Satisfied[5]

While the elements of Rule 23(a) often merge, Defendants fail to analyze the requirements of each element in favor of piqued rhetoric and insinuation that this analytical overlap somehow results in a souped-up standard. *See* Memo., at 14. Moreover, Defendants' arguments that these elements are not satisfied rest solely on their contrivance that certain members putative class would be worse off if Plaintiffs' claims are successful. *See id.* The showings required to establish each element, however, are clear—and clearly met.

##### i. Commonality

Defendants **do not address** the common questions Plaintiffs identify, including whether Defendants' process to monitor the Plan's investments and fees comported with applicable standards, whether the Plan paid excessive recordkeeping fees, and

---

Plaintiff Cervantes would have been worse off while Plaintiffs Ornelas and Horton would have **minimally benefitted** [from their proffered alternative investments]."). There is no *quantum* of loss necessary to establish standing; all that is required is some loss. Throughout the Opposition, Defendants carelessly about-face from argument to argument in an effort to garner an erroneous result.

[5] Defendants do not contest that the numerosity requirement of Rule 23(a)(1) is met.

whether the Plan suffered losses. *See* Motion, at 12 (citing *Clark v. Duke Univ.*, 2018 WL 1801946, at *5 (M.D.N.C. Apr. 13, 2018)). However, "Plaintiffs' claims and "each class member's claim [are] based on the same events and legal theory . . . ." *Clark*, 2018 WL 1801946, at *5.

Defendants' argument is materially identical to an argument rejected in *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008):

> Defendants urge that the Court deny class certification because individualized damage inquiries will dwarf the liability inquiry. Specifically, Bechtel asserts that "excessive fee" and "non-disclosure" claims are necessarily individualized and incapable of class-wide proof. Defendants further argue that any calculation of damages will require a comparison of individual accounts and the hypothetical value of the Plan, assuming Defendants have not caused any injury to its assets.
>
> \* \* \*
>
> [T]he common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees, whether they made imprudent investment decisions, and whether they concealed information from all Plan participants. Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the [plan].

*Id.* at 108–110. Common questions strike at the heart of Plaintiffs' Plan-wide claims and those of all class members.

### ii. Typicality

Typicality is a "permissive standard and the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Id.* at 110 (quotation marks omitted). Courts routinely find variation in the degree of recovery of individual class members does not defeat typicality:

> Although Plaintiff and the unnamed class members might have each suffered different degrees of harm from Defendants' alleged breaches, the allegation that the harms arose from the same set of policies and practices satisfies typicality.

*Mattson v. Milliman, Inc.*, 2023 WL 7350523, at *4 (W.D. Wash. Oct. 6, 2023).

Defendants criticize Plaintiffs' expert for analyzing the Active Suite as a whole. There is no intellectual honesty in their criticism, as it ignores that target date funds ("TDFs") are selected as a suite of funds rather than individual investments. Put another way, fiduciaries select an entire suite of TDFs, rather than choosing individual vintages from different investment managers. *Cf. Boley*, 36 F.4th at 131 ("each class representative suffered a concrete injury traceable to Universal's imprudent choice to include the Fidelity Freedom Fund ***suite*** in the Plan, rather than [an alternative TDF] ***suite***[.]" (emphasis added)). There is also a cynical hypocrisy to this argument. In seeking summary judgment, Defendants (incorrectly) argued the retention of the challenged investments caused no harm to the Plan based on an analysis that self-servingly ***netted*** the performance of each of the challenged investments. *See* ECF No. 100-1, at 12–15; ECF No. 100-2, at ¶¶ 227–28. Put simply, Defendants argue netting should be part of the analysis when it serves their purposes, but not as part of a legitimate analysis of Plan-wide losses by Plaintiffs' expert. Surely, if Plaintiffs' expert had not netted performance within a single investment suite (resulting in a greater estimate of the Plan's losses), Defendants would have a different complaint. In sum, Defendants' hypothesizing about subclasses based on vintages is contrary to the Plan's structure, the investment products at issue, and the derivative nature of ERISA § 502(a)(2) claims.

Defendants attempt the same parsing with Plaintiffs' recordkeeping fee claim, arguing the claim "benefits Plan participants who had relatively more money in their accounts at the expense of Plan participants who had relatively less money in their accounts." Memo., at 16. Plaintiffs' claim, however, is not that every participant in the Plan should have paid exactly $34. Rather, Plaintiffs claim the Plan ***as a whole*** should have paid a fee amounting to no more than $34 per participant. This is consistent with the way recordkeeping fee arrangements are negotiated—prudent fiduciaries would have negotiated reasonable total fees for the Plan and then allocated

those fees appropriately. Ms. Allen conceded during her deposition that she did not have this understanding of Plaintiffs' claim. *See* Berin Decl., Ex. 1, at 123:17–126:6 (Q. So you understand there's a difference between -- or at least there's a potential difference between what the Plan pays a recordkeeping per participant and what -- and how the Plan allocates the fees to the Plan? A. I'm not sure that I do. No."). Defendants have no answer for this disconnect between Ms. Allen's analysis and Plaintiffs' claim. Moreover, "[e]ven . . . fee variations among class members . . . would be the type of 'minor variations in the fact patterns underlying individual claims' that do not defeat typicality." *Khan v. Board of Directors of Pentegra Defined Contribution Plan*, 2023 WL 6256204, at *4 (S.D.N.Y. Sept. 26, 2023) (citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)). Ms. Allen's analysis is either sunk by her misunderstanding of Plaintiffs' claim and the way recordkeeping fees are negotiated,[6] or it is a deliberate attempt to mislead.

This Court previously rejected the arguments mustered by Defendants, but they fail to legitimately engage with the Court's actual holdings in an attempted sleight-of-hand. *See* Memo., at 16–17. This Court's decision in *Urakhchin* patently **does not** hold that every member of a proposed class must benefit from a theory of recovery, as they suggest. *See id.* (citing *Urakhchin*, 2017 WL 2655678). Unsurprisingly, Defendants cite no specific portion of the Court's decision when making this suggestion. In fact, the Court held just the opposite:

> Defendants argue that there are Plan participants who have no complaints about the funds offered by the Plan and would be harmed by injunctive relief removing those funds from the Plan's menu. However, such a conflict necessarily depends on what kind of relief is ultimately awarded by the Court, and the Ninth Circuit has stated on more than one occasion that potential future conflicts are insufficient to deny class certification.

---

[6] This is unsurprising, as Ms. Allen has never served as a retirement plan fiduciary or service provider. *See* Berin Decl., Ex. 1, at 40:23–44:11.

*Urakhchin*, 2017 WL 2655678, at *5 (citation omitted). For the same reason, Defendants' attempt to distinguish *Munro* is unavailing. *See* Memo., at 17 (citing *Munro v. University of Southern California*, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019). In derivative actions under ERISA § 502(a)(2), losses are determined at the plan-level, and may appropriately account for the total performance of a single investment suite and time period:

> [T]hese differences relate to degree of injury and level of recovery. So long as the alleged cause of the injury remains the same across all funds, "even relatively pronounced factual differences will generally not preclude a finding of typicality."

*Boley*, 36 F.4th at 134 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)). Again, Defendants' arguments and "evidence" are predicated on a misstatement of Plaintiffs' theories and mischaracterizations of the law. Ms. Allen's opinions, and Defendants' regurgitation of them, do not create more than "speculative" conflicts. Instead, the evidence shows that the Plan as a whole suffered losses and would benefit from a recovery. In addition, although Defendants repeatedly carp that Ms. Allen's analysis is unrebutted, *see, e.g.*, Memo., at 17, opinions that are irrelevant to the test properly applied by the Court (here, because such opinions are not premised on Plaintiffs' actual theory of liability and ignore the relevant legal framework) need not be "rebutted" for the Court to find typicality satisfied.

### iii. Adequacy

Defendants stake their adequacy challenge on the same arguments about manufactured conflicts. Again, these conflicts do not prevent complete recovery for the Plan or prevent certification. Adequacy has been found in countless similar ERISA actions where a plaintiff "was invested in one of the [challenged investments] and is attempting to enforce, on behalf of the Plan's [investors in the challenged funds], fiduciary duties owed to the Plan." *See, e.g., Mattson*, 2023 WL 7350523, at

*4. This does not lead to mismatched incentives or diminish the likelihood that representative plaintiffs will pursue meritorious theories on behalf of a plan and absent class members.

That class members' shares of the Plan's losses vary based on the timing of their participation and investment elections does not defeat adequacy. *See Tracey v. MIT*, 2018 WL 5114167, at *6 (D. Mass. Oct. 19, 2018) (citation omitted) (finding no intra-class conflict where some class members benefitted from allegedly imprudent investments). The Third Circuit also rejected Defendants' incentive argument in *Boley*. *See* 36 F.4th at 134 (finding plaintiffs' "claims are the same for participants across all the Plan's thirty-seven funds. Each participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory[.]").

Defendants' argument ignores Plaintiffs' vigorous prosecution of the Plan's claims and experts bearing on the Plan's losses. Defendants' suggestion that Plaintiffs have developed evidence of loss that "doesn't apply to the vast majority of the individuals they seek to represent in the putative class" is just plain wrong. Memo., at 17. Defendants cannot credibly suggest Plaintiffs are inadequate representatives because they did not develop evidence unnecessary to prove a right to recovery simply because Defendants and their expert refuse to acknowledge Plaintiffs' actual theory of recovery.[7] Plus, the assertion that Ms. Allen's opinions are unrebutted is fanciful—Mr. Dirks offers contrary evidence bearing on the Plan's losses.

There are no conflicts that render Plaintiffs inadequate representatives and, thus, no need for other evidence or subclassing, as Defendants hyperbolically suggest.

---

[7] Defendants attempt to wedge in their standing argument once again. As already explained, Plaintiffs have standing to bring each of their Plan-wide claims.

- 12 -

### 2. The Class may be Certified Under Rule 23(b)(1)

Defendants' Rule 23(b)(1) arguments fly in the face of bedrock authority regarding certification in ERISA actions. *See Urakhchin*, 2017 WL 2655678, at *7 ("Most ERISA class action cases are certified under Rule 23(b)(1).").

First, Defendants contend there is no risk of incompatible standards of conduct. *See* Memo., at 18–19. But even Defendants acknowledge "[i]f an individual Plan participant were to prevail," the result might be "standards of conduct requiring Defendants to remove imprudent Plan options, take remedial steps with respect to fees, and restore Plan losses from the alleged imprudence." *Id.* (quotation marks omitted). If these remedies are pursued by different participants in the same Plan, the result risks incompatible standards. *See Urakhchin*, 2017 WL 2655678, at *7 ("Because Defendants cannot manage the Plan in an individualized fashion for each Plan participant, whatever injunctive relief an individual plaintiff obtains would be applied to the Plan as a whole.").

Second, Defendants contend there is no risk that adjudications with respect to some participants' claims would be dispositive of the interests of other participants. This ignores the derivative nature of ERISA § 502(a)(2) claims. Indeed, "[i]f this claim were brought by an individual Plan participant, any judgment on Defendants' liability would necessarily affect the determination of any claim for monetary relief for this same conduct brought by other Plan participants in any concurrent or future actions." *Urakhchin*, 2017 WL 2655678, at *8.

Finally, concerning any argument about conflicts, "certification of an ERISA class as a (b)(1) class is not dependent on the degree of individual proof that will be required for individual plaintiffs to recover[.]" *Boley*, 36 F.4th at 136.

Certification under both subparts of Rule 23(b)(1) is appropriate.

### II. CONCLUSION

The Court should grant the Motion.

| | | |
|---|---|---|
| 1 | DATED: November 17, 2023 | Respectfully submitted, |
| 2 | | |
| 3 | | /s/ *James C. Shah* |
| | | James C. Shah (SBN 260435) |
| 4 | | MILLER SHAH LLP |
| 5 | | 19712 MacArthur Boulevard |
| | | Suite 222 |
| 6 | | Irvine, CA 92612 |
| 7 | | Telephone: (866) 540-5505 |
| | | Facsimile: (866) 300-7367 |
| 8 | | Email: jcshah@millershah.com |
| 9 | | |
| | | James E. Miller (SBN 262553) |
| 10 | | Laurie Rubinow |
| 11 | | MILLER SHAH LLP |
| | | 65 Main Street |
| 12 | | Chester, CT 06412 |
| 13 | | Telephone: (866) 540-5505 |
| | | Facsimile: (866) 300-7367 |
| 14 | | Email: jemiller@millershah.com |
| 15 | | lrubinow@millershah.com |
| 16 | | Alec J. Berin |
| 17 | | MILLER SHAH LLP |
| | | 1845 Walnut Street, Suite 806 |
| 18 | | Philadelphia, PA 19103 |
| 19 | | Telephone: (866) 540-5505 |
| | | Facsimile: (866) 300-7367 |
| 20 | | Email: ajberin@millershah.com |
| 21 | | |
| | | Mark K. Gyandoh |
| 22 | | CAPOZZI ADLER, P.C. |
| 23 | | 312 Old Lancaster Road |
| | | Merion Station, PA 19066 |
| 24 | | Telephone: (610) 890-0200 |
| 25 | | Facsimile: (717) 233-4103 |
| | | Email: markg@capozziadler.com |
| 26 | | |
| 27 | | |
| 28 | | |

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

*Counsel for Plaintiffs, the Plan, and the Proposed Class*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,197 words, which complies with the word limit set by the Court's Procedures (Section 7).

DATED: November 17, 2023       /s/ *James C. Shah*
                               James C. Shah (SBN 260435)
                               MILLER SHAH LLP